**AMERICAN LEASE PLANS, INC., a corporation, Respondent,**

v.

**Riley CARDIN, d/b/a Commercial Contractors, Appellant.**

**No. 37014.**

Missouri Court of Appeals, St. Louis District, Division Four.

Oct. 4, 1977.

Motion for Rehearing and/or Transfer Denied Nov. 14, 1977.

Albert C. Lowes and David G. Beeson, Buerkle, Buerkle & Lowes, Jackson, for appellant.

William H. Frye, Vogel & Frye, Cape Girardeau, for respondent.

ALDEN A. STOCKARD, Special Judge.

On April 5, 1972, Riley Cardin, d/b/a Commercial Contractors, entered into an "Aircraft Lease" arrangement with American Lease Plans, Inc. of Charlotte, North Carolina. On the face of the instrument it was stated that the "Orginal cost of Aircraft, including all fees and taxes" was $14,250, that the "Amortization Period" was 60 months, and that the Monthly Rental Rate "For first month through 60 months [was] $21.25 per thousand dollars and fraction thereof of original cost," and "For 61st month through 72nd month $.833 per thou-

sand dollars and fraction thereof of original cost." Title of the aircraft was to remain in Lessor.

Lessee made no monthly payment to Lessor. In June of 1972 an engine on the aircraft "went out," and Lessee stored the aircraft at Cape Girardeau. There was some conversation between Lessee and representatives of Lessor concerning the condition of the aircraft and who should pay for the repairs, but Lessor repossessed the aircraft and on November 16, 1972, it was sold to National Tank Maintenance Corporation for $10,500.

Lessor brought suit against the Lessee in two counts. By Count I it sought to recover the rentals accrued up to the time it repossessed the aircraft. By Count II it sought to recover the difference between the total rentals that were to have been paid and the amount received for the aircraft when sold, together with attorney fees. Lessee filed a counterclaim in two counts. By Count I he sought damages for fraud and misrepresentation as to the condition of the aircraft, and by Count II he sought damages for the wrongful repossession and sale of the aircraft. A jury was waived and the trial court entered judgment in favor of Lessor on each count of the petition and against Lessee on each count of the counterclaim. Lessee had appealed.

It is admitted by the parties that the "Aircraft Lease" was executed in North Carolina, and that the Uniform Commercial Code of that State is applicable. However, we note that the material provisions of the North Carolina law are identical to the corresponding provisions of the Missouri law.

The repossession and sale of the aircraft was accomplished according to the terms of the "lease," but Lessee contends that the agreement was a "security agreement" within the meaning of § 25–9–105(h) (all statutory references are to General Statutes of North Carolina) and for that reason Lessor had to comply with the notice requirements of § 25–9–504(3), and with § 25–9–602, pertaining to contents of the notice, and with § 25–9–603, pertaining to

the method of giving notice. The basis for this contention at trial and on this appeal is that in addition to the written agreement, there was an oral agreement whereby Lessee was granted the right to purchase the aircraft at the end of the 60 month period for a nominal sum. He assigns error in the refusal of the court to consider evidence of the oral agreement and to rule that the lease constituted a security agreement. We note that in § 25–1–201(37) it is provided that "whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." Therefore, assuming there was an oral agreement whereby Lessee had the right to purchase, it would be a factual question in this case whether the price was nominal.

We are of the opinion that the written provisions of the lease established a security agreement within the meaning of the North Carolina Uniform Commercial Code, and that it is not necessary to determine whether the evidence of an oral agreement was admissible.

A security agreement is defined as "an agreement which creates or provides for a security interest." § 25–9–105(h). A security interest is stated to mean "an interest in personal property * * * which secures payment or performance of an obligation." § 25–1–201(37). In § 25–9–202 it is stated that the provisions of the Code "with regards to rights, obligations and remedies" applies whether "title to collateral is in the secured party or in the debtor," and the term "collateral" is defined as "property subject to a security interest." § 25–9–105(c). Finally, the Code applies to "security interests created by * * * lease," § 25–9–102(2), when intended by the parties, and "Whether a lease is intended as security is to be determined by the facts of each case." § 25–1–201(37).

In this case the lease is stated to be for a term of 60 months and a definite sum each month is to be paid as rental. It is then provided in par. 15 that "If Lessee fails to pay when due any rent or other amount required herein to be paid to Lessor by Lessee * * * Lessor shall have the right * * * to exercise any one or more of the following remedies: * * * (b) to take possession of the aircraft * * * [and] (c) to sell the aircraft at public or private sale upon such terms as it deems advisable, and in the event of such sale the Lessor shall * * * be entitled to retain as liquidated damages and not as penalty the net proceeds of any such sale and to recover from Lessee all additional amounts, determined pursuant to paragraph 11(b) * * *. Notwithstanding any such action Lessor may take, including taking possession of the aircraft, Lessee shall remain liable for the full performance of all its obligations hereunder, provided, however, that if Lessor terminates this lease as to the aircraft, Lessee shall not be liable for rent in respect of such aircraft accruing after the date of such termination."

The language of the lease unquestionably created an interest in the aircraft to secure to Lessor the payment by Lessee of his obligation created by the lease to pay 60 monthly payments as "rent" for the aircraft, if the Lessor elected not to terminate the lease, and we accept the proposition that the parties, at least Lessor, who prepared the printed agreement, intended the clearly expressed meaning of the words used.

We conclude that what was labeled as an "Aircraft Lease" was not a true lease governed by the law of bailments, but was a security agreement within the meaning of the Uniform Commercial Code. Therefore, the repossession and sale of the aircraft was governed by the provisions of that Code.

Although the trial court concluded that the written agreement was a lease of equipment not intended by the parties to be a security agreement, and not subject to Art. 9 of the Uniform Commercial Code, pursuant to Rule 73.01(3)(c) it permitted the Lessee to present evidence of the alleged oral agreement, of the failure of Lessor to comply with the notice requirements of the Uniform Commercial Code, and of the damages resulting to him from the wrongful sale.

When disposition of the collateral is to be made by public or private sale "reasonable notification" of the time of the sale must be given by the secured party to the debtor, and "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." § 25–9–504(3). There was no actual notice to Lessee of the intended sale, but there is evidence to the effect that Lessor attempted to communicate with Lessee but could not locate him. Whether these efforts were reasonable under the circumstances is not discernable from the evidence. However, there is no evidence that the attempted communications would have supplied the information required by § 25–9–602. Also, there is no evidence as to what would have been "commercially reasonable" for the sale of an aircraft, or what is the custom or established practice in the industry. The result is that although this was a court tried case, the record is insufficient to resolve the essential issues for a final and complete disposition of the entire case.

■ By Count I of the petition Lessor sought the accrued rentals, and it was entitled to those rentals whether or not the agreement was a security agreement. Lessee does not challenge Lessor's right to accrued rentals. Therefore, the judgment as to Count I of the petition is affirmed.

■ By Count II of the petition Lessor sought to recover the difference between the amount owed under the agreement and that obtained at the sale. The right to this recovery depends on whether there was substantial compliance with the Uniform Commercial Code. Therefore, the judgment as to this Count is reversed and the cause remanded.

■ Count I of Lessee's counterclaim sought damages for fraud and misrepresentation. There is no evidence to support the

328

claim, and there is no point on appeal pertaining to this issue. The Count is deemed to be abandoned, and the judgment as to this Count is affirmed.

By Count II of the counterclaim, damages were sought for the failure of the Lessor to comply with the repossession and sale requirements of the Uniform Commercial Code and it is dependent upon the disposition of Count II of the petition. Therefore, the judgment as to this Count is reversed and the cause remanded.

It is so ordered.

SMITH, P. J., and NORWIN D. HOUSER, Special Judge, concur.