Cyril Anthana KOLOCOTRONIS,
Appellant,

v.

James K. RITTERBUSCH, Respondent.

No. WD 34147.

Missouri Court of Appeals,
Western District.

Feb. 7, 1984.

As Modified March 21, 1984.

Edward Berg, Mid-Missouri Legal Services, Columbia, for appellant.

John Ashcroft, Atty. Gen., JoAnn Leykam, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., and SHANGLER and BERREY, JJ.

BERREY, Judge.

This case concerns the statutory right of an involuntarily committed mental patient to refuse antipsychotic medication. Appellant, a patient at the Fulton State Hospital, filed a petition for injunction in the Circuit Court, Probate Division, of Callaway County to terminate the administration of prolixin and the proposed administration of lithium carbonate. In his petition, appellant contends that he is within the ambit of § 630.180, RSMo.1980, which restricts the state's authority to forcibly administer "... any form of medical treatment of any person who is being treated by prayer in the practice of the religion of any church which teaches reliance on spiritual means for healing...." After a hearing without the aid of a jury, the circuit court issued an order denying appellant's petition because his purported religion was not of any "church." The order is affirmed.

Appellant was originally committed by the Circuit Court of St. Louis on a charge of assault with intent to ravish and transferred to Fulton State Hospital in February, 1961. Subsequently, appellant was transferred from Fulton to a hospital in Montana, then to Western State Hospital in Washington, and finally back to Fulton in May, 1981. There is no evidence in the record that appellant has ever been adjudicated incompetent.

Appellant is 46 years old and of gifted intelligence, having an I.Q. of 139. He has been diagnosed by the Fulton State Hospital Clinical Director, Dr. Henry Bratkowski, as suffering from manic depression. This illness' symptomatology includes grandiose illusions, hyperactivity, pressured speech and distractibility. To mitigate these symptoms, Dr. Bratkowski prescribed biweekly injections of prolixin and vitamin B–12. At the hearing, Dr. Bratkowski testified that appellant should be treated with lithium carbonate, but this was not being done because appellant had stated that he would physically resist its administration.

Appellant testified that he allowed prolixin to be administered because it could be done forcibly if he had refused, and he would rather receive this drug than lithium. He testified further, however, that some medication was acceptable if taken when needed.

Appellant claims to be the founder of the "Heaven on Earth" religion. In 1963, appellant, while hospitalized, wrote and subsequently published a book entitled *The New Bible* that sets forth his beliefs. Preeminent among these tenets is resort to prayer for the healing of "all mental illness, schizophrenia, depression, manic depression, paranoid grandiosity...." A thorough reading of *The New Bible* is a trip through never, never land. The following excerpt at page 107 of *The New Bible* is but an example:

This religion and me are against all psychiatric treatment done by psychiatrists, doctors, judge, or anybody else, for all time, including behavior modification, es-

pecially some things that are illegal, Lobotomy, brains burned out, radio implanted in the brain, ESP, electrical plant simulation, computers implanted, movement manipulation, remote control, electrode implanting, psycho-surgery, electroshock treatment, electro compulsive shock treatments, cattle prods, gas shock treatment, X-ray treatments, olive oil treatments and injection, implanting radioactive seeds, ultrasonic beam implanting, beam implanting, protein proton beams, freezing, medications, tranquilizers, drugs, straps, straightjackets, imprisonment, solitary, and all similar treatment. Which shows the doctors may be more crazy than me for thinking up stuff like that to do. Them are all treatments.

A complete reading of *The New Bible* reveals musical lyrics and scores, photographs of nude females, movie personalities, Hitler, babies, editorials and sketches, all with no interconnecting thought pattern.

Appellant's petition for an injunction is premised upon § 630.180, RSMo., which reads:

> The provisions of this Chapter and Chapters 631, 632, and 633, RSMo., shall not be construed as authorizing any form of compulsory medical treatment of any person who is being treated by prayer in the practice of the religion of any church which teaches reliance on spiritual means for healing unless the person or his legal guardian, if any, consents to such treatment.

At the hearing, appellant failed to adduce substantial evidence demonstrating the existence of *any* religious followers. Indeed, the following is the only evidence offered by the appellant:

> Q. Uh-huh. Now are there people other than you that are members of this religious organization?
>
> A. Yes, sir.
>
> Q. Who would they be?
>
> A. The guy that's got followers in France said not to bring his name up in court. I told him I would bring his name up in court, and he said please don't do it

or I'll get him in trouble in France. And he said he don't want his name brought up in court. And he said that—he stopped writing me then. He used to write me real glorified, flattering letters.

The circuit court considered appellant's failure of proof to be fatal to his argument. The court interpreted § 630.180 literally, defining "church" as "some type of organized body of theology held by more than one person." Under this interpretation, appellant was not entitled to injunctive relief.

## I.

Appellant argues that the circuit court committed five errors during the hearing. The gist of appellant's argument is that in interpreting § 630.180 the court did not rely upon established canons of statutory construction. The following discussion clearly demonstrates that no such error was committed.

As set forth in appellant's brief, points relied on A and D read:

### A

THE TRIAL COURT SHOULD HAVE FOUND THAT SUBSTANTIAL EVIDENCE SHOWED THAT APPELLANT'S BELIEFS WERE A RELIGION PROTECTED BY THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 5 OF THE MISSOURI CONSTITUTION IN THAT APPELLANT'S BELIEFS WERE BASED UPON APPELLANT'S RELIGIOUS TRAINING IN THE OLD AND NEW TESTAMENTS, THAT APPELLANT HAD MAINTAINED A CONSISTENT BELIEF SINCE 1964, AND THAT APPELLANT'S BELIEFS HAD THE TRAITS OF ORTHODOX RELIGIONS. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S BELIEFS WERE NOT PROTECTED BY § 630.180 (1980) IN STATING THAT ONLY RELIGIONS HELD BY TWO OR MORE PERSONS WERE PROTECTED BY THE STATUTE AND MAKING THE MORAL

JUDGMENT THAT APPELLANT'S BE-LIEFS WERE DEPRAVED AND NOT PROTECTED. [citations omitted]

D

THE TRIAL COURT ERRED BY IN-TERPRETING § 630.180 RSMO. (1980) TO APPLY TO ONLY INDIVIDUALS OF AN ORGANIZED CHURCH CON-SISTING OF AT LEAST TWO MEM-BERS SINCE THIS INTERPRETATION IS ABSURD AND MAKES THE STAT-UTE INEFFECTIVE BY VIOLATING THE FREE EXERCISE OF RELIGION AND ESTABLISHMENT CLAUSES IN THE UNITED STATES CONSTITU-TION AND MISSOURI CONSTITU-TION. THE COURT SHOULD HAVE INTERPRETED THIS STATUTE US-ING THE ACCEPTED CANNONS [sic] ADOPTED BY THE COURTS AND FOUND THAT THE STATUTE PRO-TECTED THE RIGHT OF ALL PER-SONS OF EVERY RELIGION TO RE-FUSE MEDICAL TREATMENT BE-CAUSE OF THEIR INDIVIDUAL BE-LIEF. THIS LATTER INTERPRETA-TION WOULD CARRY FORTH THE INTENT OF THE LEGISLATURE AND RESULT IN A REASONABLE EFFEC-TIVE LAW. [citations omitted]

As a preliminary matter, appellant's points relied on raise the question of whether this court, or the Supreme Court, has jurisdiction over this case. In point relied on D, appellant appears to allege that the circuit court's interpretation of section § 630.180 renders that statute un-constitutional. To clarify appellant's con-tentions, the following exchange with ap-pellant's counsel took place during oral ar-gument before this court: [1]

Q. Is this a case of first impression in Missouri?

A. My understanding is that it is your Honor.

Q. Is this the proper forum for that?

A. I did consider that your honor. I think that we are not asking this court to find that the statute is constitutional or unconstitutional We are asking that the interpretation that has been placed upon statue is in error ...

Q. This is part, is it not, part of your burden to inform us of our jurisdictional authority to decide the issue as you present it?

A. Yes it is your honor... There is a fine line here. I think that if we had come in here and said that the interpreta-tion makes the statute unconstitutional, and had argued that issue, there's no question that it would definitely be up in the Supreme Court. We are just coming in here and saying we think the statute is constitutional. We think that the inter-pretation which has been given to it by the judge of Callaway County is an im-proper interpretation....

Hence, the Court of Appeals has jurisdic-tion because this case does not concern the constitutionality of § 630.180. Mo. Const. Art. V, § 3.

Furthermore, since appellant's argument for refusing antipsychotic drugs is statuto-ry, we do not consider the constitutional bases upon which other jurisdictions have found the right of an involuntarily commit-ted mental patient to refuse treatment. *See e.g., Knecht v. Gillman,* 488 F.2d 1136 (8th Cir.1973) (Eighth Amendment); *Win-ters v. Miller,* 446 F.2d 65 (2d Cir.) *cert. den.* 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971) (First Amendment).

To fall within the purview of § 630.180, appellant had to meet three criteria: (1) his beliefs constituted a religion (2) of a church (3) that taught reliance upon spiritual means for healing. Failure to satisfy any one of these conditions precluded a finding that appellant had a statutory right to re-fuse compulsory medical treatment. The circuit court denied appellant's petition based upon the second criterion. In re-viewing this determination, the question of whether appellant's beliefs constitute a re-ligion is not answered. Rather, assuming *arguendo* that appellant's beliefs are a reli-

---

**1.** Counsel on appeal was not trial counsel.

gion, the inquiry is whether the court erroneously declared and applied the law in interpreting the term "church" as used in § 630.180. *In Re Estate of Miles,* 632 S.W.2d 323, 325 (Mo.App.1982).

Where the language of a statute is plain and admits of but one meaning there is no room for construction, *State Tax Commission v. Administrative Hearing,* 641 S.W.2d 69, 76 (Mo. banc 1982), and courts will apply the statute as it is written. *Foremost Dairies, Inc. v. Thomason,* 384 S.W.2d 651, 659 (Mo. banc 1964). Consequently, the words in a statute must be accorded their plain and ordinary meaning. *State v. Burnau,* 642 S.W.2d 621, 623 (Mo. banc 1982).

"Church" is defined in Webster's International Dictionary (3d ed. 1971) as "a body of worshipers: a religious society or organization." The term is defined in Black's Law Dictionary (rev. 5th ed. 1979) as "a congregation, organization for religious purposes; religious society or body;" it is interchangeable with the term "religious society." *Watkins v. Yancey,* 495 S.W.2d 366, 369, (Tex.Civ.App.1973).

The circuit court correctly declared and applied the law in giving the term "church" its plain and ordinary meaning. As aforementioned, appellant failed to prove the existence of a "religious society," "congregation," or "body of worshipers." Clearly, appellant has not complied with the statute and, therefore, the circuit court did not err in denying his petition for injunction.

## II.

In point relied on B, appellant assigns error because the circuit court did not consider that he had the capacity to refuse compulsory medical treatment and that such treatment was unnecessary to ameliorate his illness.

Appellant presents this argument for the first time on appeal; appellant did not raise this issue in his petition nor did he present it to the circuit court during the hearing. Therefore, appellant has not preserved it for this court to review. *Ger-*

*mann v. City of Kansas City,* 577 S.W.2d 54, 55 (Mo.App.1978).

## III.

Appellant's point relied on C is as follows:

### C

THE TRIAL COURT SHOULD HAVE FOUND FROM THE EVIDENCE THAT THE STATE HAD NOT MET ITS BURDEN OF PROOF THAT COMPELLING REASONS EXISTED TO ABRIDGE THE RELIGIOUS RIGHT OF APPELLANT TO FREE EXERCISE OF HIS RELIGION AND THE TRIAL COURT ERRED BY ALLOWING THE STATE TO RESTRICT APPELLANT'S RELIGION BY ADMINISTERING MEDICATION TO TRANQUILIZE HIM.

Appellant's point does not conform to Rule 84.04(d). Appellant's point fails "to specify *wherein* and *why* the (unspecified) ruling of the trial court was erroneous ... it does not identify any specific ruling complained of and does not give any indication of any point in the trial of the case where the trial court was called upon to take such affirmative action." *Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978). Appellant has not preserved the question for review. *Thummel, supra* at 686–87.

## IV.

Appellant's final point is as follows:

### E

THE TRIAL COURT ERRED IN ALLOWING THE DEPARTMENT OF MENTAL HEALTH TO USURP THE COURT FUNCTION OF DECIDING WHAT WAS A RELIGION PROTECTED BY THE FIRST AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE I SECTION 5 OF THE MISSOURI CONSTITUTION AND TO DECIDE HOW THAT RIGHT COULD BE ABRIDGED AND THE COURT SHOULD HAVE RULED THAT ONCE

A PATIENT RAISES THE REFUSAL TO ACCEPT MEDICAL TREATMENT BECAUSE OF HIS RELIGIOUS BELIEF THAT THE DEPARTMENT OF MENTAL HEALTH HAD TO SEEK A COURT DETERMINATION WHETHER A RELIGION EXISTED AND WHETHER THERE WAS A COMPELLING SOCIAL NEED TO INTERFERE WITH THIS BELIEF WHEN THE DISCONTINUANCE AT THE TREATMENT WAS NOT LIFE THREATENING.

Like the two preceding points, appellant's final point does not preserve any question for review. Appellant's point does not conform to Rule 84.04(d) and appellant raises this issue for the first time on appeal. *Germann, supra* at 55. The point is denied.

The order is affirmed.

All concur.