In re the MARRIAGE OF SUMNER.

**Donna Lorraine SUMNER, Petitioner–Appellant,**

v.

**John Lee SUMNER, Respondent–Respondent.**

**No. 15915.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 31, 1989.

David A. Geisler and William C. Love, Harrison, Tucker, Geisler & Hyde, Springfield, for petitioner-appellant.

David L. Smith, Cantwell, Allman & Smith, Branson, for respondent-respondent.

HOGAN, Judge.

This is an appeal from that part of a decree of dissolution disposing of the parties' marital and separate property as required by § 452.330, RSMo 1986.[1] Inasmuch as the court is asked to review only the distribution of property, a general summary of the background facts is unnecessary.

The parties were married on October 2, 1976, in North Aurora, Illinois. Both had been married and each had realized some money upon being divorced. They acquired some real property and a business—a bar known as the "School House" —in North Aurora. The property and the business were sold before the parties moved to Missouri. In February 1985, the parties purchased a tavern or bar known as the "Frosted Mug" in Forsyth, Missouri. In March 1985, they purchased a residence in Forsyth. The parties were finally separated in November 1987 and this action was commenced shortly thereafter.

The trial court issued a pretrial order directing each party to prepare, serve and file the following, at or before the trial setting: a) a separate list of legal descriptions, by separate tract, of all real estate in which either party had an interest; b) a separate list of all motor vehicles and other titled assets in which either party had an interest; c) a separate list of the nonmarital property of each party, "as proposed"; d) a separate list of all unencumbered marital property; e) a separate list of all encumbered assets bearing the name of the creditor and the payoff balance of the debt, identifying marital and nonmarital property, and f) a separate list of all unsecured liabilities and debts divided into categories of joint and sole debts of each party.

In response to this order the plaintiff listed the following property:

**REAL PROPERTY**

| ITEM | VALUE |
|------|-------|
| 1. The marital home, valued at $53,500.00, subject to a lien in the amount of $37,691.35 | $ 15,808.00 |

**INTANGIBLE ASSETS**

| ITEM | VALUE |
|------|-------|
| 1. Business known as the "Frosted Mug" | $ 50,000.00 |
| 2. Promissory note, referred to as DEAN CLARK note | 60,000.00 |
| 3. Prudential Variable Investment Plan | 49,284.73 |
| TOTAL | $159,284.73 |

**VEHICLES, HOUSEHOLD GOODS AND MISCELLANEOUS**

| ITEM | VALUE |
|------|-------|
| 1. A 1976 Chevrolet pickup | $ 1,000.00 |
| 2. A 1984 Cadillac automobile valued at $13,000.00 subject to a lien in the amount of $5,000.00 | 8,000.00 |
| 3. Fishing equipment, including Boat, motor and trailer | 675.00 |
| 4. Petitioner's nonmarital household goods (12 items) | 2,425.00 |
| 5. Household furnishings | 5,100.00 |
| TOTAL | $ 17,200.00 |

**UNSECURED LIABILITIES**

| | |
|---|---|
| 1. VISA Account | $ 6,500.00 |
| 2. Hospital and ambulance bill | 246.00 |
| 3. Real estate taxes | 230.00 |
| TOTAL | $ 6,976.00 |

---

1. References to statutes and rules are to RSMo 1986 and V.A.M.R.

TOTAL MARITAL ES-
TATE $185,316.73

The defendant listed the following property:

### REAL PROPERTY

| ITEM | VALUE |
|---|---|
| 1. Marital residence in Forsyth, valued at $53,500.00, subject to encumbrance in the amount of $37,691.35 (equity) | $ 16,000.00 |
| 2. House in Aurora, Illinois, sold under contract for deed and subject to encumbrance in the amount of the contract for deed | 0.0 |
| TOTAL | $ 16,000.00 |

### INTANGIBLE ASSETS

| ITEM | VALUE |
|---|---|
| 1. Business known as "Frosted Mug" | $ 35,000.00 |
| 2. Promissory note, referred to as the DEAN CLARK note | 60,000.00 |
| 3. Prudential investment certificate | 49,284.73 |
| TOTAL | $144,284.73 |

### VEHICLES, HOUSEHOLD GOODS AND MISCELLANEOUS

| ITEM | VALUE |
|---|---|
| 1. A 1976 El Camino | $ 1,000.00 |
| 2. A 1984 Cadillac Sedan (subject to encumbrance) | 8,000.00 |
| 3. Fishing equipment | 350.00 |
| 4. Household goods and furnishings | 1,000.00 |
| 5. Unsecured debts | (7,430.00) |
| TOTAL | $ 2,920.00 |
| TOTAL MARITAL ESTATE | $163,204.73 |

Two items included in this listing require some explanation. The house in Aurora, Illinois, was acquired by the parties while they lived in Aurora, and was sold when they moved to Missouri. The "Dean Clark" note represented the proceeds of the sale of defendant's partnership interest in a bar in Aurora, which he had sold before the parties moved to Missouri. Defendant nevertheless listed the "Dean Clark" note as marital property.

At the commencement of the trial, it was stipulated that: 1) the value of the marital residence was $53,500.00, subject to a lien in the amount of $37,691.35, leaving an equity of $15,808.65; 2) the value of the Cadillac was $13,000.00, subject to an encumbrance in the amount of $5,000.00, leaving an "equity" of $8,000.00; 3) the value of the boat, motor and trailer was $675.00; 4) the Dean Clark note was in the amount of $60,000.00 and the interest thereon, in the amount of $500.00 per month, was being paid to the defendant. It was further stipulated: 1) that the value of the Prudential Variable Investment Plan was $49,284.73; 2) that there was an outstanding debt with VISA in the amount of $6,500.00, which, according to the defendant, was $7,200.00; 3) real property taxes due on the marital residence were $230.00; 4) ambulance and hospital bills in the amount of $246.64 were due, and 5) the plaintiff's attorney's fees in the amount of $1,050.00 were due. The parties had been unable to agree on the value of the "Frosted Mug." Plaintiff believed the business was worth $50,000.00; the defendant believed it was worth $35,000.00. It was conceded by counsel for the defendant that the stipulations, as far as they went, were correct.

The trial court heard evidence and on April 26, 1988, entered a decree ordering: 1) that the marriage be dissolved; 2) that no maintenance be awarded either party; 3) that the plaintiff be awarded property she had listed as being her personal and separate property (12 items of the value of $2,425.00); 4) that the plaintiff receive the marital residence, subject to the indebtedness thereon, which the plaintiff was ordered to pay, together with the real property taxes due on the marital residence; 5) that the plaintiff be awarded the 1984 Cadillac, subject to the lien thereon, which plaintiff was to discharge; 6) that plaintiff be awarded all the furniture and household goods; 7) that the defendant receive: a) the pickup truck, b) the fishing equipment, c) the parties' business, i.e., the "Frosted Mug," and d) all his personal effects; 8)

that each party be awarded one-half of the "Dean Clark" note and one-half of the Prudential Investment Plan; 9) that plaintiff pay the VISA cash advance, and 10) that the defendant pay the hospital and ambulance bill which was due.

The plaintiff filed a timely motion to set aside or amend this decree, as permitted by Rule 73.01(a)(2). It was agreed by the parties that the first decree had not disposed of all the property and should be set aside for that reason. The trial court gave the parties an opportunity to be heard, and the court's remarks in connection with the Illinois property should be noted:

"[The] Court intends to—it's been pointed out to the Court by the parties that the Court overlooked property—real estate located in Illinois in the names of both [plaintiff] and [defendant], which property was sold to others on a contract for deed, but that the warranty deed or legal title has not yet been delivered to the purchasers. And that these parties do own this asset, and this asset is subject to a mortgage.

So, the Court does award to [defendant] the property in Illinois; Aurora, Illinois, I believe it is. And orders that [defendant] perform the terms of the contract for deed and to assume and pay the mortgage against the property and to save and hold the [plaintiff] harmless from any obligation on that mortgage and on the contract for deed...."

The trial court also announced other changes it proposed to make in its distribution of property. Although the court indicated the parties might be heard, the plaintiff stood silent, even though it was she who had moved to amend the decree.

The court then entered a new decree. The following tabulation, using values which the trial court might have found and including only marital property, indicates the division of property made by the second decree:

### TO THE PLAINTIFF

| Property | Value |
| --- | --- |
| Marital home ($53,000.00 subject to encumbrance of $37,691.35) | $15,808.00 |
| Cadillac automobile ($13,000.00 subject to encumbrance of $5,000.00) | $ 8,000.00 |
| Household goods and furnishings (using plaintiff's valuation) | 5,100.00 |
| One-half of all refunds due on Federal and State income taxes for year 1987 | |
| One-half of the DEAN CLARK Note | 30,000.00 |
| One-half Prudential Variable Investment Fund | 24,642.37 |
| VISA Account (charged as plaintiff's separate debt) | (7,093.22) |
| TOTAL | $76,457.15 |

### TO THE DEFENDANT

| Property | Value |
| --- | --- |
| Business known as "Frosted Mug" (using defendant's valuation) | $35,000.00 |
| 1976 pickup truck | 1,000.00 |
| Fishing equipment (using defendant's valuation) | 350.00 |
| One-half DEAN CLARK Note | 30,000.00 |
| One-half Prudential Investment Plan | 24,642.37 |
| Hospital and ambulance bills | (246.00) |
| One-half of possible 1987 State and Federal Tax refunds | |
| TOTAL | $90,746.37 |

The defendant was further ordered to pay plaintiff rehabilitative maintenance at the rate of $250.00 per month for one year and plaintiff was awarded 12 items she claimed as her separate property. In addition, the court awarded "the flight controllers lawsuit and any recovery received therein" to the defendant and ordered him to pay certain ambulance and hospital bills owed by the parties. The court also ordered the defendant to pay $500.00 of the plaintiff's attorney's fees.

■ On this appeal, the plaintiff has briefed a single point—that there is no evidence to support the award of property and that it is "unjust and contrary to Sec. 452.330" in five enumerated respects. A brief statement of the law governing this appeal, particularly the principles stated by our Supreme Court in *Dardick v. Dardick,*

670 S.W.2d 865, 51 A.L.R.4th 1 (Mo. banc 1984), is appropriate. Up to the time *Dardick* was decided, this court and the Western District required the trial court to make specific findings of the value of significant items of marital property awarded to each party unless the evidence of the value of such assets was substantially undisputed. *Dardick*, 670 S.W.2d at 865, and see *Marks v. Marks*, 618 S.W.2d 249, 251 (Mo.App.1981). Our colleagues at St. Louis, by contrast, had consistently held that absent a request for findings under Rule 73.01(a), the trial court was not required to assign a value to each item on the property inventory. *Dardick*, 670 S.W.2d at 868.

Noting that the Dissolution of Marriage Act consigns the division of marital property to the sound discretion of the trial court, *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 64 (Mo. banc 1983), our Supreme Court resolved the differing lines of authority by holding:

"[The precedents] do not countenance disturbing a trial court's decision merely because it lacks findings as to the value of the articles awarded in the dissolution decree *so long as the trial court had before it proper evidence of value.* It may be argued that review is made more difficult by the absence of detailed findings. *Nevertheless, ... appellate courts can evaluate the trial court's division of the marital property in a meaningful fashion based on the evidence in the record....*" (Emphasis added.)

*Dardick v. Dardick*, 670 S.W.2d at 868. The plaintiff has not distinguished between the necessity for findings as to the value of particular items awarded—which are not required in the absence of a request therefor—and the requirement that there be evidence of value in the record sufficient to enable the court to divide the property. We review the assignments of error with this distinction in mind.

■ As a further preliminary, we should note that with one or two exceptions, we are obliged to assume that the property divided was "marital property" within the intent of § 452.330.2. Each party brought funds to the marriage and all the property in question—with two exceptions which do not require discussion—was acquired during the marriage. All property which either or both spouses acquire during the marriage is presumed to be marital property in the absence of proof to the contrary, *Rasmussen v. Rasmussen*, 627 S.W.2d 117, 121[10] (Mo.App.1982), and in this case there was no proof to the contrary.

The plaintiff's first subpoint is that there was no evidence of the value of the Illinois real estate which had been sold under a contract for deed; no evidence of the value of a "flight controllers" suit which was awarded to the defendant, and no evidence of the value of a tax refund which was divided equally between the parties.

■ As far as the flight controllers' suit is concerned, the defendant testified that he worked from 1967 to 1981 as an air traffic controller for the United States Government. We find no record evidence that the defendant's interest in the U.S. air controllers' strike has any value, but that interest was awarded to the defendant as his sole and separate property. In the absence of a showing that the defendant's financial interest in the flight controllers' lawsuit was an item of substantial value, it is not a factor to be considered in determining whether a division of marital property is equitable. See *Anderson v. Anderson*, 656 S.W.2d 826, 828[4] (Mo.App.1983). As for the 1987 tax refunds, we agree that the record justifies only an inference that the parties *might* be entitled to a refund of an overpayment of Federal and State income taxes for the year 1987. However, even though the value of the interests in a tax refund could not be ascertained at trial time, it was proper to make an award of the refund as an "inchoate" interest. Cf. *In re Marriage of Null*, 608 S.W.2d 568, 570 (Mo.App.1980).

■ As to the value of the Illinois property, we agree there was no positive testimony establishing what it was worth, or that the indebtedness owed against the property was equal to the balance due on the contract for deed. However, it was

listed by the defendant as an "encumbered asset," thus:

"2. House [in] Aurora, Illinois, sold under Contract For Deed to HARRY and ANNIE NELSON and DORIS NELSON on August 15, 1987. There is an indebtedness owed by [Plaintiff] and [Defendant] to FIRST FAMILY MORTGAGE CORPORATION and the mortgage owed by the parties equals the balance owed by the NELSONS to the SUMNERS under the Contract."

The value of this property was stated as being "NONE."

We do not say nor suggest that the schedules of assets filed by the parties were binding admissions—no formal pretrial order was entered. Nevertheless, as a general rule, when the divorce court has jurisdiction to divide property, each party has a duty to make a full and accurate disclosure of all assets and liabilities to facilitate the trial court's property distribution, *Rider v. Rider*, 251 Iowa 1388, 105 N.W.2d 508, 511[4, 5] (1960); *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 765–66 (Minn. 1983); 27B C.J.S. Divorce § 508, p. 502 (1986), and in the absence of any evidence to the contrary, the trial court was justified in giving countenance to the schedules of property filed in response to its order. Further in this connection, a quotation from *Smith v. Smith*, 682 S.W.2d 834, 836 (Mo.App.1984), is appropriate:

"The trial courts are bombarded with dissolution cases which, by statute, [require] division of the [parties'] property.... The trial judge is often at the mercy of the lawyers. The trial judge cannot introduce evidence, yet he or she has a duty to make a fair division of the property. He or she must rely on the discovery and introduction of evidence by the parties' lawyers regarding the existence and value of property. Aside from default cases, *the parties have at least an equal burden to carry on the matter of evidence of value in a dissolution. A complainant should not be rewarded for presenting insufficient evidence of property values.* (Emphasis ours.)

The principle announced in *Smith*—that the parties have at least an equal burden to carry on the matter of evidence of value— is applicable here, particularly as to the Illinois property sold upon contract for deed. The defendant's schedules were filed and presumably served upon the plaintiff. Plaintiff made no attempt to prove the value of the Illinois property during the trial. Upon the motion to amend the original judgment, the plaintiff might have been heard, but offered no objection when the trial court announced it intended to award the Illinois property to the defendant. The award of the Illinois property was not objected to in the motion for new trial. The plaintiff may not now complain. See *Smith v. Smith*, 682 S.W.2d at 836.

■ The plaintiff also argues that "[t]he trial court failed to ... properly value the ... 'Frosted Mug'; [failed to] determine the nature and extent of the parties' respective interests in the business; and ... [failed to] consider the income generated by the business in awarding it to [the defendant]." This argument, of course, ignores the distinction made in the *Dardick* case, from which we have quoted. If the plaintiff wished the court to make findings on specific issues, e.g., the nature and extent of the parties' interest in the "Frosted Mug," it was her duty to specify the issues upon which findings were sought. *Dardick v. Dardick*, 670 S.W.2d at 867[1]; *Snider v. Snider*, 570 S.W.2d 770, 774–75[2] (Mo.App.1978). No specific findings were requested and the plaintiff may not now complain. Nevertheless, it was necessary that one of the parties introduce evidence from which a fair and accurate valuation could be made. *Bidstrup v. Bidstrup*, 750 S.W.2d 712, 713 (Mo.App.1988).

■ The defendant testified that he and the plaintiff purchased the Frosted Mug Tavern in February 1985, from John and Ruth Burhans. The purchase price was $33,000.00. The parties to this action purchased the business only; no real estate was involved. According to the defendant, "less than $5,000" was spent remodeling the tavern after the parties purchased it. The bar was approximately 40 years old,

and the equipment was old. The defendant had had experience operating bars. There are many methods of calculating the value of a going business, including the nebulous "goodwill" which is usually taken into account, see *In re Marriage of Brooks*, 742 S.W.2d 585 (Mo.App.1987), but we hold to the view that an experienced owner of a business is competent to testify to the value of that business in the absence of a showing that he in fact lacks knowledge of the value at issue or that his opinion is based on an improper standard. *Norman v. Norman*, 604 S.W.2d 680, 685 (Mo.App. 1980). The defendant testified that the fair market value of the "Frosted Mug" was $35,000.00; the plaintiff believed it was worth more. The trial court was at liberty to accept the defendant's testimony. We find no merit in the plaintiff's first two subpoints.

■ A further point is that the trial court did not consider the misconduct of the defendant in dividing the property. The defendant's misconduct was, on occasion, remarkable. The parties seem to have fought a good deal, and the plaintiff vividly described one fight which took place in the women's restroom at the Frosted Mug. On the other hand, the parties moved from Illinois to Missouri because the plaintiff was engaging in a liaison with one of the defendant's business partners. Both parties were guilty of misconduct, and the "conduct of the parties during the marriage" is a factor to be considered in dividing property in a dissolution proceeding. Section 452.330.1(4). Nevertheless, § 452.330.1(4) was never intended to authorize judicial censure of either party by means of a wholly disproportionate distribution of marital property. *Marriage of Schulte*, 546 S.W.2d 41, 48 (Mo.App.1977); *In re Marriage of Neubern*, 535 S.W.2d 499, 502 (Mo.App.1976). In this case, there is ample evidence of misconduct on the part of both parties and we cannot say one was more culpable than the other.

■ The plaintiff also complains that the trial court erred in charging her with a balance due on a VISA charge card. The plaintiff's testimony was that she obtained a cash advance on her husband's VISA card "[b]ecause I know my husband and he wouldn't have given me money to live on." The defendant testified that he had "experienced problems" because his wife continually took money from the cash register. He also testified that he did not authorize his wife to obtain a cash advance on his VISA card, and was not aware she was going to do so. The trial court could readily have found that the VISA charge was unauthorized and unnecessary. This point is without merit.

The plaintiff's final subpoint is that "[t]here was no evidence of any income from the tavern business or that such income was used as living expenses for both parties." The point is not developed in the brief, and we decline to consider it.

■ May it be said that the division of marital property was so heavily and unduly weighted in favor of the defendant as to constitute an abuse of discretion? Appellate courts interfere only in such cases. *Dardick v. Dardick*, 670 S.W.2d 865, 869, *Colabianchi v. Colabianchi*, 646 S.W.2d at 64. Plaintiff has received marital property of the value of $83,550.37; she has been charged with the VISA account as her sole and separate debt. The defendant has received $90,992.37; he has been charged with hospital and ambulance charges incurred by the plaintiff after the parties had a fight in the ladies restroom of the "Frosted Mug." We are not convinced that the trial court's division of marital property in this case is so unreasonable as to constitute an abuse of discretion. Accordingly, the judgment of the trial court is affirmed.

FLANIGAN, P.J., and MAUS, J., concur.