**In re the Marriage of: Gayle Lou MYERS and Robert Scott Myers.**

**Gayle Lou MYERS, Petitioner– Respondent,**

**v.**

**Robert Scott MYERS, Respondent– Appellant.**

**No. 17810.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 10, 1992.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 31, 1992.

Application to Transfer Denied Feb. 23, 1993.

John A. Clayton, Thomas, Birdsong & Clayton, P.C., Rolla, for petitioner-respondent.

Clifford Schwartz, Schwartz & Ochs, St. Louis, for respondent-appellant.

MAUS, Judge.

The Circuit Court of Phelps County entered a decree dissolving the marriage of Gayle Lou Myers (Wife) and Robert Scott Myers (Husband), on September 13, 1991. The court set aside to each party certain items of separate property and awarded Wife 45% and Husband 55% of the marital property. Husband appeals. The following is a brief background of the case.

Husband is a physician in Rolla, Missouri. Husband and Wife met in January 1984, while Husband was treating Wife for depression. In February they began living

together on Husband's farm. In April 1984 Wife began working at Husband's office. They were married August 22, 1986, and separated May 5, 1988. No children were born of this marriage. However, both parties had children from previous marriages.

Besides being a physician, Husband also raised quarter horses prior to the marriage. During the marriage, he and Wife continued this venture. Several horses were purchased and sold. The parties also purchased several vehicles during the marriage.

The court set aside to Husband, as his separate property, several pieces of real estate owned by him prior to the marriage, horses valued at $40,160.00, three vehicles, and other property in his possession. Certain items of personal effects in Husband's possession, valued at $1,925.00, were set apart to Wife as her separate property.

The court found the parties owned, as marital property, the following:

1. One-week time share in Acapulco Plaza Hotel, valued at $7,000.00.
2. Eight vehicles, valued at $47,500.00.
3. One horse trailer, valued at $7,000.00.
4. Horses, valued at $79,200.00.
5. Other items of personal property valued at $24,125.00.

The total value of the marital property was $164,825.00. The court found the parties had marital debts in the amount of $10,528.19.

Husband, as his share of marital property, was awarded the following:

1. One-week time share in Acapulco Plaza Hotel, valued at $7,000.00.
2. Eight vehicles, valued at $47,500.00.
3. One horse trailer, valued at $7,000.00.
4. All horses, valued at $79,200.00, tack, records, sale documents and registration papers.
5. All marital property in his possession not specifically awarded to Wife, valued at $20,150.00.

Wife was awarded, as her share of marital property, the following:

1. All marital property in her possession not specifically awarded to Husband, valued at $3,975.00.
2. The sum of $70,000.00 which Husband was ordered to pay her.

Wife was ordered to pay marital debts in the amount of $1,411.48. Husband was ordered to pay marital debts in the amount of $9,116.71, temporary maintenance of $5,500.00, $3,000.00 towards Wife's attorney's fees, and all court costs. Husband states six points.

■ The sufficiency of the statement of those points to preserve an issue for review is governed by the following principles:

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder. . . .

Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule." Rule 84.04(d).

"After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends." *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978). (Emphasis in original.)

"The point fails to state wherein and why the court's rulings are erroneous, a fatal violation of Rule 84.04(d)." *Callier v. Callier*, 793 S.W.2d 164 (Mo.App.1990). "Appellant's point fails 'to specify *wherein* and *why* the (unspecified) ruling of the trial court was erroneous . . . it does not identify any specific ruling complained of and does not give any indication of any point in the trial of the case where the trial court was called upon to take such affirmative action.' *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978). Appellant has not preserved the question for review." *Kolocotronis v. Ritterbusch*, 667 S.W.2d 430, 434 (Mo. App.1984). (Emphasis and omission in original.)

"It is not enough for the point, as here, via conclusions of claimed error to simply say the trial court was wrong without alluding to some evidence or testimony which gives support to such conclusions. *In re Estate of Sifferman*, 603 S.W.2d 30, 31[1] (Mo.App.1980)." *Montesano v. James*, 655 S.W.2d 137, 139 (Mo.App. 1983).

A contention not encompassed in a properly-stated point will not be considered.

"Where appellant fails to raise an issue of alleged error in his points relied on, the issue will be deemed abandoned by the appellate court. *State ex rel. Holly Inv. Co. v. Board of Zoning Adjustment*, 771 S.W.2d 949, 950–51 (Mo.App. 1989); *American Lease Plans, Inc. v. Cardin*, 558 S.W.2d 325, 328 (Mo.App. 1977)." *Livingston Manor v. Dept. of Social Serv.*, 809 S.W.2d 153, 157 (Mo. App.1991).

■ The principles by which the merit of any issue preserved by the stated points is to be measured include the following:

"In a dissolution of marriage action, the decree or judgment of trial court shall be affirmed, if it could properly have been reached on any reasonable theory, unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies law." *Tully v. Tully*, 813 S.W.2d 926, 928 (Mo.App.1991).

"Due regard is given to the trial court's determination on the credibility of witnesses. Rule 73.01(c)(2); *Looney [v. Estate of Eshleman*, 783 S.W.2d 164 (Mo.App.1990)], 783 S.W.2d at 165. The trial judge is in a better position than this court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record. *In re Marriage of Chilton*, 576 S.W.2d 584, 585 (Mo.App. 1979). The trial judge, as the trier of fact, can disbelieve testimony even when uncontradicted. *Robinson v. Estate of Robinson*, 768 S.W.2d 676, 677 (Mo.App. 1989)." *In re Marriage of Lewis*, 808 S.W.2d 919, 922 (Mo.App.1991).

"... All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(2).

"No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Rule 84.13(b).

"We are mindful that for error to be reversible, there must be prejudice to the complaining party." *DeLaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526, 535 (Mo.App.1991).

Husband's first point is:

"The trial court erred in accepting 'in toto' counsel for petitioner's proposed decree. Said decree was not the court's decree. The decree as entered is so contradictory on its face that it fails to comply with basic rules of judicial certainty and finality. The surname of the child involved is listed as Duncan instead of Spurgeon. Properties are listed with incorrect legal descriptions. Respondent is said to have two residences when, in fact and in evidence, only one such residence exists. There is no disposition of nonmarital horses. These factual errors show that the court failed to comprehend the factual situation and that its findings as to maintenance, attorney's fees, costs, and division of property are prejudiced and erroneous and must be set aside."

The general and conclusory nature of this point is apparent. The references to typographical or clerical errors in the child's name and in the legal descriptions of property set apart to Husband state no basis for relief. "There may be some inaccuracies in other findings, perhaps contributed to by the slipshod manner in which some evidence was presented to the trial court, but they do not impair the soundness and validity of the trial court's judgment nor do they warrant discussion." *Moore v. Beck*, 664 S.W.2d 15, 19–20 (Mo.App.1984). The point states no specific action of the court which was prejudicial to Husband. See *Kolocotronis v. Ritterbusch*, supra. The conclusion the court failed to comprehend the factual situation does not state "where-

in and why" the court erred, within the requirement of 84.04(d). The point preserves nothing for review.

Husband's second point is that the court erred in distributing the marital property by awarding Wife $70,000.00 for a twenty-month marriage because the court did not consider the conduct of Wife in committing adultery, living with her paramour and having a child by him. The evidence does establish Wife's misconduct as stated in the point. Section 452.330.1(4) RSMo Cum.Supp.1991 provides that spousal misconduct is a factor to be considered in distributing the marital property. But, it is only one factor, the weight of which is to be determined by the trial court. *Hogan v. Hogan,* 796 S.W.2d 400 (Mo.App.1990). There was also evidence of Husband's misconduct, the details of which need not be stated. Suffice it to say, the trial court could reasonably find Husband's misconduct was more egregious than that of Wife.

"In this case, there is ample evidence of misconduct on the part of both parties and we cannot say one was more culpable than the other." *In re Marriage of Sumner,* 777 S.W.2d 267, 274 (Mo.App. 1989).

Also see *Warner v. Warner,* 684 S.W.2d 946 (Mo.App.1985). The record does not establish the trial court did not consider Wife's misconduct. Husband's second point is denied.

Husband's third point is:

"The entire division of property is unjust and erroneous. It is erroneous because many of the findings have no evidence to support them, many of the items have no substantial evidence to support the decree, and most of the items are against the weight of the evidence and thus the court erroneously applied the law. In the description and valuations of real estate, the court is wrong on its face. In determining value of autos, the court mistakes corporate vehicles for marital vehicles and the case of a fire loss ignores the payment of insurance. In regard to horses, the court finds some $40,160.00 of non-marital horses without any evidence as to value whatsoever.

Numerous other errors are designed to build up an erroneous value of marital property existent, all to give the petitioner a large lump sum of cash. The decree does not meet the standards of the law, is erroneously prejudicial against the respondent, and must be set aside."

This statement is replete with assertions such as "unjust and erroneous", "against the weight of the evidence", "numerous other errors", and "erroneously prejudicial". Such abstract conclusory phrases present nothing for review. The point does not state "what" vehicles were misdescribed or "what" insurance was ignored. The valuation of nonmarital horses could not "build up" the value of marital property. The point does not state "wherein and why" the court ruled to the prejudice of Husband. The third point preserves nothing for review.

Husband's fourth point is:

"The trial court erred in awarding petitioner attorney's fees in the amount of $3,000.00 and in ordering the respondent to pay the costs herein. Included in the costs was an item of $1,586.57 which were the fees of the guardian ad litem appointed. Respondent paid for blood tests and is ordered to pay for the guardian ad litem, all of which proved that he was not the father of a child born during the pendency of the marriage. The trial court awarded attorney's fees of $3,000.00 against the respondent, failing to consider the extent to which the other party's conduct required the expense of attorney's fees. The trial court's award of attorney's fees and payment of costs under the circumstances is an abuse of discretion and must be set aside."

Wife's attorney's fees were $3,971.90. As noted, it was the judgment of the court that Husband pay those fees to the extent of $3,000.00. Section 452.355 RSMo Cum. Supp.1991, in part, provides:

"1. The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding

under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name."

"Inability of the spouse to pay an attorney's fee is not a requirement for the awarding of a fee." *In re Marriage of Gourley*, 811 S.W.2d 13, 22 (Mo.App.1991). The ability to pay is a factor to be considered. *Kieffer v. Kieffer*, 590 S.W.2d 915 (Mo. banc 1979).

"A husband may properly be ordered to pay his wife's attorney's fees where he has a greater earning ability than wife, *Gonzalez v. Gonzalez*, 689 S.W.2d 383, 386 (Mo.App.1985)[.]" *In re Marriage of Clark*, 801 S.W.2d 496, 500 (Mo.App. 1990).

The record demonstrates Husband has a greater ability to pay and a greater earning capacity than Wife.

■ However, another "factor to consider in awarding attorney fees to a party is the extent to which the other party's conduct required the expense of attorney's fees." *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 655 (Mo. banc 1989). Husband relies upon this factor in arguing that the trial court erroneously required him to pay $3,000.00 of Wife's attorney's fee. In making this argument, he refers to Wife's marital misconduct. The conduct referred to in the cases relied upon by Husband is not marital misconduct. The cases refer to the conduct of a party in reference to the litigation requiring the expenditure of legal time. The record shows the principal issues in this case that engendered the attorney's fees were the establishment of marital misconduct and the identification and division of marital property. The record also shows that these issues were raised and developed by both parties. "In a dissolution action, the trial court has broad discretion in awarding or denying attorneys fees and the award will be disturbed on appeal only upon a showing that the trial court abused its discretion." *Burden v.*

*Burden*, 811 S.W.2d 818, 821 (Mo.App. 1991). This court finds no abuse of discretion in the award of attorney's fees.

■ However, the same considerations do not apply to the portion of costs that accrued by reason of the appointment of a guardian ad litem for Tanner Duncan Spurgeon, the child born to Wife and her paramour. When pleadings or the evidence in the case show that the paternity of a child is an issue, a guardian ad litem must be appointed for the child. *S.___ v. S.___*, 595 S.W.2d 357 (Mo.App.1980); *Lechner v. Whitesell by Whitesell*, 811 S.W.2d 859 (Mo.App.1991). The facts in this case make it clear the necessity for the appointment of a guardian ad litem and the resulting expense was the responsibility of Wife. The judgment is amended to provide that Husband is to pay the costs, except the fee of the guardian ad litem, and that Wife shall pay the fee of the guardian ad litem.

■ As his fifth point, Husband asserts the trial court erred in its allocation of the marital debts. The trial court is under no obligation to divide such debts. *Harry v. Harry*, 745 S.W.2d 824 (Mo.App. 1988). However, such action is generally desirable. *Johnston v. Johnston*, 778 S.W.2d 674 (Mo.App.1989); *Brisco v. Brisco*, 713 S.W.2d 586 (Mo.App.1986). The trial court is granted broad discretion in assigning the primary responsibility to pay any marital debts. *Huber v. Huber*, 682 S.W.2d 493 (Mo.App.1984); *Murray v. Murray*, 538 S.W.2d 587 (Mo.App.1976).

■ Husband argues that he should not be ordered to pay medical and hospital bills incurred as a result of Wife's depression. Husband claims the depression suffered by Wife was the outcome of her own conduct. The trial court, however, could reasonably find that her treatment for depression was at least partially caused by Husband's conduct.

■ More fundamentally, the trial court, in making its division of marital property, considered the allocation made of the marital debts. It was proper that the court do so. *Brisco v. Brisco*, 713 S.W.2d

at 592. Marital property valued at $73,975.00 was distributed to Wife upon the basis of Husband's payment of marital debts in the amount of $9,116.71. Wife should not be required to expend the marital property distributed to her upon that basis on a debt assigned to the Husband. The trial court did not abuse its discretion in the assignment of marital debts. Husband's fifth point is denied.

 Husband's sixth and last point is that the trial court erred in awarding Wife $5,500.00 "as and for" temporary maintenance because "she wrote herself a series of checks which should reasonably be set off against any sum owed". That point has the following background. On July 8, 1988, the parties entered into an agreement whereby "Defendant agrees to pay, temporary maintenance in gross (pendente lite) in the amount of $6,000, in monthly installments of $1,000 per month for six months, commencing July 15, 1988." Wife waived any further claim to maintenance. The trial court found Husband had paid $500.00 upon that obligation and entered judgment for the balance of $5,500.00.

In support of his point, Husband cites checks totaling $500.00 payable to Wife's paramour. The record shows there were four checks totaling $600.00, all written in April 1988. Wife testified those checks were for her paramour's salary for working at the horse farm.

Husband further cites checks referred to on designated pages of the transcript. The checks have not been filed as exhibits. An examination of the record discloses that Husband complains of seven checks Wife wrote before July 8, 1988. Four of those checks were to third parties. Wife testified they were for items such as office supplies. She explained that the three other checks written to her were for salary and not to be credited on the temporary maintenance. The record also shows that after July 8, 1988, Husband wrote four checks payable to Wife totaling $970.00. Wife testified a $500.00 check was intended to be credited upon the temporary maintenance, but the remaining checks were for other purposes. As stated, the credibility of the testimony of Wife was for the trial court. The trial court accepted her explanation for those checks. Moreover, the trial court could reasonably find it should not offset checks written before the settlement agreement was entered into, against the temporary maintenance obligation created by that agreement. Husband's last point is denied.

The judgment of the trial court is amended to provide Wife shall pay the fee of the guardian ad litem, instead of Husband. In all other respects, the judgment of the trial court is affirmed.

FLANIGAN and PREWITT, JJ., concur.