DONNELLY, Judge.
Respondent, Joan E. Kloppenburg, was injured in a fall while she was working as a salesperson in a retail shoe store. She filed for compensation under the Workers’ Compensation Law § 287.010, RSMo 1978, et seq. Her claim was heard before James H. Wesley, Jr., Chief Administrative Law Judge, Division of Workers’ Compensation, who denied the claim finding that Mrs. Kloppenburg’s injury was idiopathic and did not arise “out of” her employment. Respondent appealed to the Labor and Industrial Relations Commission, which reversed the award of the administrative law judge, and entered an award of $9,007.02. The Court of Appeals, Southern District, affirmed the award of the Commission and this Court granted transfer. Mo. Const, art. V, § 10.
We review to determine whether the Commission’s award was authorized by law and whether it is supported by competent and substantial evidence upon the whole record: Mo. Const, art. V, § 18. The facts as viewed in a light most favorable to the award, Ricks v. H.K. Porter, Inc., 439 S.W.2d 164 (Mo.1969), are as follows:
Mrs. Kloppenburg is president of Queen Size Shoes, Inc., which she and her husband own. She is a large woman, standing six feet and weighing two hundred, forty pounds. Mrs. Kloppenburg is also an employee of the corporation and works as a sales clerk, waiting on customers. When there were no customers in the store, Mrs. Kloppenburg would customarily position herself in the front of the store in the customer service area. She usually sat in a chair with her legs crossed, waiting for customers to come in. Occasionally the phone would ring and Mrs. Kloppenburg would get up and walk toward the back of the store to answer it. Mrs. Kloppenburg testified that she usually hurried to answer the phone on the first ring so as not to disturb her husband, who was working on the accounts in the back.
*236 On December 30, 1982, at approximately four o’clock in the afternoon, Mrs. Klop-penburg was seated with her legs crossed, as described above. The phone rang and she rose to answer it. After taking one or two steps, she fell and injured her right arm. Mrs. Kloppenburg denied any trip, slip or unusual movement. She stated that her left leg just would not support her. She further testified that she did not have any feeling in the leg and “[i]t was different than I had ever felt before.” She denied having any dizzy spells and stated she had no prior health problems, but was in good health at the time. Mrs. Kloppen-burg denied that her leg had ever given out on her before for any reason.
Dr. Cunningham, who treated Mrs. Klop-penburg at the emergency room, testified that she told him upon admission that her leg had “gone to sleep.” The doctor opined that her leg could not support her because “she had compromised the circulation to her left lower extremity by the position her leg was in.”
Section 287.120, RSMo Cum.Supp.1986 provides in pertinent part:
Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. The term “accident” as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.
Preliminarily we note that the statute requires two separate showings before an injury is compensable: it must arise “out of” and “in the course of” the employment. Dehoney v. B-W Brake Co., 271 S.W.2d 565 (Mo.1954), Parrish v. Kansas City Security Service, 682 S.W.2d 20 (Mo.App.1984). The only issue here is whether Mrs. Kloppenburg’s injury arose “out of” her employment.
An injury arises “out of” the employment “when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury.” Dehoney, 271 S.W.2d, at 566. However, “no all-embracing definition of the phrase * * * has yet been framed [and] [ejvery case * * * should be decided upon its own particular facts and circumstances and not by reference to some formula.” Id. at 567. Applying these principles, we find that the record contains competent and substantial evidence to support the Commission’s conclusion that Mrs. Kloppenburg’s injury arose out of her employment.
It was customary and in keeping with her duties as a sales clerk that Mrs. Klop-penburg position herself in the front of the store away from the telephone. It was also within the scope of her duties to sit while she waited for customers to enter the store. It is common for one to cross one’s legs while sitting and doing so must be viewed as a normal incident of sitting. It is also, as Dr. Cunningham testified, very common for people to have a leg fall asleep while sitting, which one might say is a normal risk of sitting. The record further indicates that Mrs. Kloppenburg was expected to answer the phone quickly, thus minimizing her ability to timely sense the problem in her leg. Based on the foregoing, it was reasonable for the Commission to have concluded that there was a causal connection between the conditions under which Mrs. Kloppenburg worked and the fall which resulted in her injury.
Accordingly, the award of the Commission is affirmed.
HIGGINS, C.J., and BILLINGS, BLACK-MAR, ROBERTSON and RENDLEN, JJ„ concur.
WELLIVER, J., dissents.