**WOHL SHOE COMPANY, Appellant,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent.**

No. 71048.

Supreme Court of Missouri,
En Banc.

June 13, 1989.

Juan D. Keller, Brenda L. Talent, St. Louis, for appellant.

William L. Webster, Atty. Gen., Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

In this case, we answer the question left open in footnote 4 of *International Travel Advisors, Inc. v. State Tax Commission,* 567 S.W.2d 650, 655 (Mo. banc 1978) (*"Intrav"*). The issue is whether non-Missouri sales made prior to January 1, 1980, to non-Missouri customers subject to credit approval and acceptance in Missouri are transactions partly within and partly without Missouri for purposes of Section 143.-451.2(2)(b), RSMo 1986. This case involves the construction of a revenue law of this state. We have jurisdiction. Mo. Const. art. V, § 3. The Administrative Hearing Commission found the transactions at issue subject to allocation under Section 143.451.-2(2)(b). We affirm.

## I.

The facts are not in dispute. Wohl Shoe Company (Wohl) is a subsidiary of Brown Group, Inc., headquartered in St. Louis, Missouri. Although it engages in the retail sale of shoes, for purposes of this case, Wohl's activities are limited to its wholesale operations through which it sells and ships shoes to wholesale customers. During the first few months of its 1976–1977 fiscal year, Wohl shipped shoes for its wholesale sales operation from a warehouse located in St. Louis, Missouri. In April, 1977, Wohl moved its warehouse operations to Memphis, Tennessee, and shipped shoes from that location.

Fifty-five salesmen, operating as independent contractors, sell Wohl shoes to customers throughout the United States. Of these fifty-five salesmen, only four reside in Missouri. Buyers in St. Louis compile Wohl's product lines and establish the proper price for the shoes sold by the salesmen. Each year, Wohl conducts four meetings at which the product line is presented to salesmen and wholesale customers. Two of these meetings are held in St. Louis and two outside of Missouri.

Each of the salesmen are assigned a geographical area. Shoe orders obtained by the salesmen are sent to St. Louis for credit approval, acceptance and processing. Once the orders are accepted, they are sent by computer to the Tennessee warehouse. Orders received at the Tennessee warehouse are given to fillers and packers who fill the orders and ship them directly to the customers. Customers send their payments to lock boxes at regional banks in the geographic area in which the shoes are purchased. Money from the lock boxes is wired to Wohl's St. Louis bank. In the event payment is not received, Wohl's St. Louis collection department is responsible for seeking payment.

The Tennessee warehouse is leased by Wohl and employs a general manager and eight to nine other employees in clerical capacities. The payroll for this warehouse is paid from the St. Louis headquarters; funds to meet the payroll and other expenses are electronically transferred to Memphis on a weekly basis from a St. Louis bank.

Eight employees in the St. Louis office are assigned to create and direct all advertising efforts for Wohl's wholesale division. In addition, all of appellant's accounting

records for the wholesale group are maintained in St. Louis. All employee withholding taxes, employment security taxes, sales taxes, and reports are produced, recorded and filed in St. Louis.

In preparing its 1977 Missouri income tax return, Wohl reported sales negotiated outside Missouri by the non-Missouri salesmen and shipped from the Tennessee warehouse to customers outside of Missouri as sales wholly without Missouri. After an audit, the Director of Revenue treated Wohl's wholesale sales as sales partly within and partly without Missouri. Wohl filed a timely protest. The Director of Revenue issued his decision denying Wohl's protest. Wohl timely filed its complaint before the Administrative Hearing Commission contesting the Director's decision.

The Administrative Hearing Commission determined that the transactions in question are partly within and partly without Missouri and the result of an overall effort centered in Missouri.[1] Pursuant to Section 143.451.2(2)(b), the Commission found these sales subject to taxation and concluded that half of the gross receipts received from the wholesale sales should have been included in the numerator of appellant's single factor apportionment formula for Missouri taxation. This appeal followed.

## II.

### A.

*State ex rel. River Corp. v. State Tax Commission*, 492 S.W.2d 821 (Mo.1973), held that sales by out-of-state salesmen to out-of-state customers which were subject to credit approval in Missouri were sales wholly outside of Missouri and that the income therefrom was not taxable by Missouri. The Court defined the critical issue in *River Corp.* as "does the statute tax 'transactions' or 'sales'?" *Id.* at 828. The Court reasoned that since the allocation of

income for purposes of taxation provided in Section 143.040.2, RSMo 1969, "is based on *sales* wholly within the state and *sales* partly within the state and partly outside," the statute taxed sales and not transactions. (Emphasis in original.) *Id.* at 829. Therefore, because the sales of the taxpayer were both initiated and consummated outside Missouri, the income from such sales is not taxable in Missouri.

■ *Intrav* overruled *River Corp.* The Court held that "the legislature intended to tax income from *transactions*, including portions of income from *transactions* performed only in part in Missouri, not only income from sales where the contract was accepted in Missouri." 567 S.W.2d at 650. The Court determined that Section 143.040.2 did not impose a tax, as *River Corp.* assumed, but merely established a method by which the tax imposed in Section 143.040.1 is computed. For this reason, the Court held that *River Corp.* incorrectly stated the law. However, the Court expressly left open the question whether a different result would have obtained in *River Corp.* had that decision focused on transactions instead of sales.

This does not mean that we are indicating that a different result would follow if the interpretation of Section 143.040 herein adopted were applied in that case. The question is not before us. There were substantial factual differences between *River Corporation* and the instant case. For example, in that case, the taxpayer had branch offices from which sales were made and goods shipped and income taxes were paid other states.

*Intrav*, 567 S.W.2d at 655, fn. 4.

### B.

■ For tax years prior to January 1, 1980,[2] the "source of income" test is used

---

1. The Commission based its decision on the fact that (1) the wholesale orders were subject to credit approval and acceptance in St. Louis, (2) the St. Louis office matched orders with merchandise held in stock and transmitted shipping instuctions to the Tennessee warehouse, (3) payments were made through regional banks to the

St. Louis office, and (4) collection efforts on late payments were made by the St. Louis office.

2. Section 144.010.1(7)(b), RSMo 1986, became effective January 1, 1980. That section determines by definition when a sale is partly within and partly without Missouri. *See Wolff Shoe*

to determine if a sale occurred partly within and partly without Missouri. *Dick Proctor Imports v. Director of Revenue*, 746 S.W.2d 571, 573 (Mo. banc 1988). The source of income "is the place where it was produced." *In re Kansas City Star Company*, 142 S.W.2d 1029, 1037 (Mo.1940). This definition understands that it is the entire transaction which provides the income, not simply the sale itself. Thus, in *Artophone Corp. v. Coale*, 133 S.W.2d 343, 348 (Mo.1939), this Court wrote

> the "transaction" may and often does have a broader meaning than "contract".... " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon the logical relationship." [Citation omitted.]

And in *Kansas City Star Company*, 142 S.W.2d at 1037, the Court said "[t]he word 'transaction', as frequently used in the singular and plural, is practically all inclusive, and signifies any business activity productive of income." *Accord, Goldberg v. State Tax Commission*, 639 S.W.2d 796, 803 (Mo. banc 1982).

Based on this definition, this Court has held that where sales by salesmen outside of Missouri to customers outside Missouri were subject to direction and management from a Missouri office, such transactions were partly within and partly without Missouri. *Artophone Corp.*, 133 S.W.2d at 343. In *Intrav*, the Court said, "It makes no difference where the actual point of sale occurred so long as the transaction occurred partly in Missouri." 567 S.W.2d at 650, 654–5. The Court thus determined that income from tours which departed and returned to points outside Missouri nevertheless arose from transactions partly within and partly without the State of Missouri, because the planning and arranging was done from the St. Louis office. In *Bank Building and Equipment Corporation of America v. Director of Revenue*, 687 S.W.2d 168 (Mo. banc 1985), the Court determined that where out-of-state sales are the product of central planning and design

*Co. v. Director of Revenue*, 762 S.W.2d 29 (Mo.

from a Missouri office, the transaction is partly within and partly without Missouri. In *Hayes Drilling, Inc. v. Director of Revenue*, 704 S.W.2d 232 (Mo. banc 1986), we decided, "If the efficient entry by the taxpayer into the process by which income is produced occurs in this state, than that transaction is one 'partly within this state' within the meaning of Section 143.451.2." *Id.* at 234.

■ "Transaction" is not so broad, however, as to include all activities which touch tangentially on the production of income. Where the only Missouri connection to a transaction is that the corporation which owns out-of-state plants is a Missouri corporation, the sale is wholly outside Missouri. *F. Burkhart Mfg. Co. v. Coale*, 139 S.W.2d 502 (Mo.1940). Moreover, purchases for resale "are not part of the transaction by which the taxpayer sells or resells to its customers." *Langley v. Administrative Hearing Commission*, 649 S.W.2d 216, 217 (Mo. banc 1983).

■ These cases teach that a transaction is partly within and partly without Missouri if the Missouri effort is among the efficient causes which contribute directly to the production of the income. The decision to accept an order is a critical part of the transaction and is, we believe, one of the efficient causes contributing directly to the production of income for Wohl. In this case, the Administrative Hearing Commission found that the orders placed by the out-of-state salesmen were subject to credit approval and acceptance in Missouri. The result reached by the Administrative Hearing Commission is supported by competent and substantial evidence upon the whole record. *Dick Proctor Imports*, 746 S.W.2d at 573. Indeed, this conclusion is consistent with language in *Artophone Corp.* There the taxing authority contended that unless the taxpayer had a branch office in another state, a transaction is wholly in Missouri. This Court rejected the argument.

> [S]uppose a salesman has an office in another state and through that office

banc 1988).

makes a sale, but must report it for confirmation to the home office in this state. Would that sale be a "transaction" wholly within or partly within and partly without this state, in the meaning of the statute? It seems to us that if the Legislature had intended to make a distinction such as we have above referred to it would have so indicated by clear language in the taxing statute.

133 S.W.2d at 348–9.

## C.

 In 1979, the General Assembly enacted Section 144.010.1(7), RSMo 1986. That statute defines sales partly within and partly without Missouri for purposes of sales of tangible property to include only those sales in which property is shipped from or received in Missouri. Wohl argues that the legislature's action expresses the General Assembly's intent to impose an interpretation of Section 143.451.2(2)(b) consistent with *River Corp.* and in abrogation of both the source of income test and *Intrav's* focus on transactions, not sales.

Wohl's argument must fail. A statute effective January 1, 1980, cannot control the taxation of income earned in 1977. In matters of taxation, we find no support for the notion that a change in a statute can express the legislature's intent retroactively. This is particularly true when the General Assembly expressly determines that its enactment is not effective until a date certain, in this case January 1, 1980.

Nor is this a case in which an ambiguity in a statute is resolved in favor of the tax collector and against the taxpayer. *See Brown Group, Inc. v. Administrative Hearing Commission,* 649 S.W.2d 874, 881 (Mo. banc 1983) ("[T]ax statutes are to be strictly construed in favor of the taxpayer and against the taxing authority"). The interpretation placed on Section 143.451.-2(2)(b) and its predecessors by this Court has been driven by the Court's effort to resolve any ambiguity in the statutes in favor of the taxpayer. By interpreting the word "transaction" broadly, prior decisions of this Court permitted taxpayers to employ the single factor formula to *exclude a*

*portion* of their income from the tax collector's claims that the income was wholly within Missouri. *See, e.g., Artophone Corp.,* 133 S.W.2d at 343; *Kansas City Star,* 142 S.W.2d at 1029. Once the ambiguity was resolved by judicial interpretation in favor of the taxpayer, the meaning of "transaction" cannot change to suit the taxpayer who now wishes to read "transaction" narrowly and *exclude all* of its income from Missouri taxation.

## III.

The decision of the Administrative Hearing Commission is supported by competent and substantial evidence on the whole record. It is affirmed.

All concur.