**J.C. NICHOLS COMPANY, Appellant,**

v.

**DIRECTOR OF REVENUE,**
Respondent.

No. 72014.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1990.

Charles P. Schleicher, Mark A. Firestone, Kansas City, for appellant.

William L. Webster, Atty. Gen., Mark Siedlik, Richard L. Wieler, Asst. Attys. Gen., George Cox, Raymond T. Wagner, Jr., Sp. Asst. Attys. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

Two principal issues require resolution in this case: First, whether a taxpayer who segregates income by state but who utilizes a formula to allocate a portion of its expenses has segregated "income and deductions" and may avoid utilizing the single factor formula for determining Missouri income taxation, Section 143.451.2(1), RSMo 1986; and second, whether a taxpayer may assume approval by the Director of Revenue of its petitioned-for alternative accounting method by the silence of the Director and by filing income tax returns using that accounting method. Section 143.461.2, RSMo 1986. Because this case involves the construction of the revenue laws of this state, we have jurisdiction. Mo. Const. art. V, §§ 3 and 18, Section 621.189, RSMo 1986. The decision of the Administrative Hearing Commission is affirmed.

I.

Appellant, J.C. Nichols Company (Nichols), is a Missouri corporation with its principal offices in Kansas City, Missouri. Nichols develops, manages and sells real estate in both Kansas and Missouri. Following its incorporation in 1944, Nichols adopted an accounting practice that permitted it to allocate its income on a property-by-property basis. This method permitted Nichols to segregate its income from various properties in the two states. As to deductions, Nichols directly allocated 81.64 percent of the total expenses according to the location of the real estate, but apportioned other expenses to its various properties according to various formulae when those expenses could not practically or efficiently be allocated by its property-by-property method.

1. Tax year 1977 is not discussed in the record.

In 1972, the legislature adopted Sections 143.451 and 143.461, which will be discussed in more detail below. Apparently in response to that legislation, Nichols discussed its accounting method with an employee of the Director and, subsequent to that conversation, sent a letter to the Director indicating that Nichols would continue to follow its historical accounting method "unless I [the Nichols officer sending the letter] hear otherwise." The then Director did not respond to the Nichols letter.

Nichols continued to file its income tax returns using its property specific accounting method. In 1974, the Director informed Nichols of an income tax deficiency, stating, "Assessment: Separate Accounting not allowable.... R.S.Mo. 143.461.2." The record reveals that the Director audited Nichols for the years 1974–76; that audit yielded a refund for Nichols as did an audit of tax year 1979.[1] The Director accepted Nichols' 1978 return; Nichols used its historic accounting method. The Director's brief indicates that only tax years 1980–1984 are at issue in this case. In each of those tax years, the director sent a Notice of Deficiency to Nichols; Nichols filed a timely protest, which the Director denied. Nichols filed a timely petition for review with the Administrative Hearing Commission. The Commission decided in favor of the Director.

A.

Nichols first urges that it does not have "interstate income." We disagree.

Section 143.451.1 refers to income resulting "from a transaction partially in this state and partially in another state or states." The source of income "is the place where it was produced." A transaction is "any business activity productive of income." *In re Kansas City Star Company*, 346 Mo. 658, 142 S.W.2d 1029, 1037 (Mo. banc 1940). Thus, a transaction is partially within and partially without Missouri "if the Missouri effort is among the efficient causes which contribute directly to

the production of income." *Wohl Shoe Co. v. Director of Revenue*, 771 S.W.2d 339, 342 (Mo. banc 1989). *Bank Building and Equipment Corporation of America v. Director of Revenue*, 687 S.W.2d 168, 171 (Mo. banc 1985), put it more bluntly. There the Court found out-of-state construction transactions taxable because "the 'brains' of this specialized operation are located in St. Louis." *See also Hayes Drilling, Inc. v. Director of Revenue*, 704 S.W.2d 232, 234 (Mo. banc 1986). ("If the efficient entry by the taxpayer into the process by which income is produced occurs in this state, then that transaction is one 'partly within this state' within the meaning of Section 143.451.2.")

■ The Commission concluded that decisions *to enter the real estate transactions* at issue here were controlled by Nichols' Kansas City, Missouri headquarters. "The overall effort of [Nichols'] income-producing activities was directed from that office, and the management structure which produced the income from Kansas properties was in Missouri." This conclusion is supported by the record. On the authority of *Bank Building, Hayes Drilling,* and *Wohl Shoe,* we hold that Nichols' income is partially within Missouri and partially in another state within the meaning of Section 143.451.1. Nichols' first point is denied.

### B.

Nevertheless, Nichols argues, even if Section 143.451.2 applies, Nichols need not employ the single factor formula, Section 143.451.2, because its accounting method permits it to segregate its income and deductions. Section 143.451.2(1) states:

> Where income results from a transaction partially in this state and partially in another state or states, *and income and deductions of the portion in the state cannot be segregated,* then such portions of income and deductions shall be allocated in this state and other state or states as will distribute to this state a portion based upon the portion of the transaction

in this state and the portion in such other state or states.

(Emphasis added.)

Nichols' argument depends on two assumptions. First, Nichols contends that the segregation of income and deductions required by Section 143.451.2(1) as a condition precedent to avoidance of the single factor formula occurs if the taxpayer's method of accounting is more accurate than the single factor formula in apportioning income between the states. This is so, Nichols urges, even if *some of the deductions* (expenses in this case) must be apportioned according to a formula adopted by the taxpayer for that purpose. Second, Nichols believes that it has an absolute right to apportion its income provided its accounting method segregates all income and deductions on a property-by-property basis.

We need not consider Nichols' initial assumption for that position depends on the correctness of its second proposition. Even if Nichols' accounting method totally segregates its income and deductions and even if Section 143.451.2 permits *de minimis* failures of the accounting method so to segregate, Nichols' second assumption is flawed. The flaw is fatal to Nichols' argument.

■ The flaw in Nichols' second position is its assumption that the right to use an alternative accounting method that purports to segregate income and deductions under Section 143.451.2 is unfettered. This is contrary to the unambiguous language of the statute. Section 143.461.2 requires affirmative approval of the Director prior to the use of an alternative accounting method on a taxpayer's income tax return.

> If the corporation shall keep its books and records so as to show by any other method of allocation between this state and other states involved of income from transactions partially within and partially without this state, including gross income and deductions applicable thereto, and such method shows the income applicable to this state, including gross income and deductions applicable thereto, then it may, on or before sixty days before the end of any taxable year, peti-

tion the director of revenue, in writing, to be permitted in its return required to be filed to apportion to this state according to the method shown by such books or records. *If the director of revenue finds* that such method does show the income applicable to this state including gross income and the deductions applicable thereto, *he shall notify the corporation,* at least thirty days prior to the last day on which such corporation's return for that taxable year is to be filed, *that it may use that method* as long as such method shows the income applicable to this state, including gross income and deductions applicable thereto.

(Emphasis added.) There is nothing in this record to indicate that the Director found Nichols' accounting method acceptable for Missouri income tax reporting purposes.

Nichols persists, however, hypothesizing two bases for this Court's inferring the requisite approval by the Director. First, Nichols contends that under *In re Kansas City Star Co.*, 346 Mo. 658, 142 S.W.2d 1029 (Mo. banc 1940), this Court has found that a history of consistent accounting by a taxpayer to which the Director fails to object is tantamount to approval of that accounting method. Second, Nichols asserts that its September 20, 1983 letter to the Director constitutes a petition within the meaning of Section 143.461.2 and that the Director's failure to respond to the letter constitutes approval of Nichols' accounting method.

In *Kansas City Star*, the taxpayer filed its income tax returns for ten years using an alternative to the statutory accounting method. The state auditor did not object to those returns and deposited the taxpayer's payment in the state treasury. The statute then in force required the taxpayer to petition and the auditor to approve alternative accounting methods in language virtually identical to the language of Section 143.461.2. The Court held that the verified returns acted as implied requests for approval of the alternative accounting method and the auditor's failure to object to the returns inferred approval. "[T]he failure

of respondent [taxpayer] to petition for and obtain consent to make allocation on the basis shown in the returns did not destroy appellant's [state auditor] discretionary approval of it." *Id.* 142 S.W.2d at 1036.

In *M.V. Marine Co. v. State Tax Commission*, 606 S.W.2d 644, 651 (Mo. banc 1980), this Court acknowledged that "the [*Kansas City*] *Star* rule might be subject to reexamination." The Director invites us to conduct that reexamination in this case, contending that *Kansas City Star* is no longer apposite given statutory changes in the manner in which taxes are assessed and collected.

■ Under the statute in effect for the tax years at issue in *Kansas City Star*, the taxpayer filed its return with the city assessor. Section 10125, RSMo 1929. The assessor had thirty days to examine the return and assess the tax. Section 10128, RSMo 1929. Under current income tax statutes, tax authorities no longer assess; the taxpayer self-assesses subject to audit by the authorities. The statutory supposition upon which *Kansas City Star* is constructed—that the tax authorities affirmatively consider and approve a taxpayer's return annually—is no longer valid. It is, therefore, no longer possible to infer from silence that the Director has approved an alternative accounting method; there is no statutory obligation on the part of the Director to consider the correctness of a return unless and until it is selected for audit. To the extent that *Kansas City Star* holds that a taxpayer may assume approval by the Director's silence, it is overruled.

■ This holding renders any lengthy discussion of Nichols' argument that its September 20, 1973 letter was a petition for approval of an alternative accounting method unnecessary. Because the Director did not respond directly to the letter, Nichols cannot claim that it is entitled to assume approval. The argument is further eviscerated by the notice of income tax deficiency sent by the Director to Nichols in 1974 and stating "[s]eparate account not allowable." [2]

**2.** On July 23, 1986, the Director sent Nichols notice of his final decision for tax year 1973.

In sum, Nichols' contention that its accounting method is more accurate than the statutory formula is irrelevant. Until the Director approves—by the affirmative act of finding that the taxpayer's proposed method properly segregates income and deductions by state—the alternative accounting method sought by a taxpayer may not be employed for income tax purposes. Section 143.461.2. Nichols' point is denied.

### III.

Nichols' final point involves a number of issues focusing on the propriety of the Commission's order modifying the Director's assessment to include Kansas transactions as partly within Missouri for income tax purposes. The Director assessed the income from the Kansas property as wholly outside Missouri. The Commission concluded that Nichols' overall income producing activities were directed from Nichols' Missouri office, that the Kansas transactions in question were approved in Missouri and, as a matter of law, that income derived from those transactions was partially in Missouri for income tax purposes. *Wohl Shoe*, 771 S.W.2d at 339; *Hayes Drilling*, 704 S.W.2d at 232.

### A.

Nichols first argues that the Commission does not have the authority to modify the Director's assessment. We disagree.

The Commission is "an adjunct executive agency [exercising] ... independent and impartial decisionmaking authority in disputes between agencies and those persons affected by their actions." *State Tax Commission v. Administrative Hearing Commission*, 641 S.W.2d 69, 75 (Mo. banc 1982). The Commission exercises agency adjudicative power; that "power extends only to the ascertainment of facts and the application of existing law thereto in order to resolve issues within the given area of agency expertise." *Id.* Thus, the Commission

> is simply a hearing officer who exercises the same role as any administrative hearing officer authorized to hear contested cases within an agency.... It simply determines, on evidence heard, the administrative decision of the agency involved. The ... Commission decision becomes the administrative action of the Department.

*Geriatric Nursing Facility, Inc. v. Department of Social Services*, 693 S.W.2d 206, 209 (Mo.App.1985).

The legislature intended for the Commission to render the agency's decision. This is the import of the language of Section 621.050.2, requiring adherence to the procedures of Chapter 536 in appeals from the Director to the Commission. Moreover, this view is consistent with this Court's decision in *Newmann v. Director of Revenue*, 785 S.W.2d 536 (Mo. banc 1990), in which we held that the Commission has no jurisdiction to hear an appeal from the Director where the Director has previously provided the aggrieved party with notice and hearing in accordance with statutory requirements. *See also Labrayere v. Goldberg*, 605 S.W.2d 79, 84 (Mo. banc 1980) ("The absence of any provision for review by the Administrative Hearing Commission of the record in the department of revenue confirms that the legislature did not contemplate ... a separate hearing both in the department ... and in the ... Commission in any case.")

Because the Commission announces the decision of the agency, the Commission's decision in this case to adjust the Director's assessment is within the authority of the Commission. It is within the authority of the Commission because it is within the

---

The Director's communication informed Nichols "that the Final Notice of State Tax Deficiency at issue is fully abated." Nichols argues that this letter constitutes the finding by the Director of approval of Nichols' alternative accounting method required by Section 143.461.2. We disagree. The fact that the Director chose to settle his dispute with Nichols for tax year 1973 can-

not be read as approval of the accounting method for subsequent years. This is apparently borne out by the Director's continued "interest" in tax years subsequent to 1973. Moreover and as we now hold, Section 143.461.2 requires an affirmative approval of the proposed accounting method. Such approval is absent here.

authority of the agency. The point is denied.

### B.

■ Nichols next contends that even if the Commission had the authority to alter the Director's decision, it could not do so because the Commission's modified assessment did not meet the statutory requirements for assessment. Nichols urges that Section 143.611.2, RSMo 1986, is mandatory and requires the Director to notify the taxpayer of the "amount proposed to be assessed" as a deficiency. Relying on *Commercial Bank of St. Louis v. James,* 658 S.W.2d 17, 23 (Mo.1983), Nichols contends that the amount set out in the notice is the maximum amount that can be assessed.

*Commercial Bank* dealt with the failure of the taxing authority to send any notice, even though the statute required notice. Nichols does not contend that the Director failed to send the notice required by Section 143.611.2. *Commercial Bank* is thus of no help to Nichols in this case.

By its clear terms, Section 143.611.2 uses the word "proposed." The very use of that word indicates that the amount set out is fluid, subject to adjustment upon the determination of additional facts. The notice is intended to do no more than apprise the taxpayer that the Director disagrees with its self-assessment. Here the Director informed Nichols of his disagreement with Nichols' accounting method. The Commission found as a matter of law that certain transactions should have been included in Nichols' income calculation. Nichols had the opportunity to argue the legal point. We find no failure of notice to Nichols. The point is denied.

### C.

Nichols next argues that inclusion of these Kansas transactions was improper because such findings by the Commission were "beyond the scope of the pleadings." This argument is a bit disingenuous, given that the entirety of this case focuses on Nichols' accounting method and the Director's disagreement with that method. We deny the point without further discussion.

### D.

■ Finally, Nichols asks this Court to hold that the Commission erred in admitting copies of its press releases as evidence. The exhibits in question are copies of press releases issued by Nichols involving Kansas transactions and indicating that a Missouri based employee of Nichols participated in the transaction. Nichols furnished the press releases in response to the Director's discovery requests, but now contends that they are hearsay, irrelevant and lacking in foundation.

Evidentiary rules applicable to proceedings before the Commission are contained in chapter 536 and as we have previously said, are expressly mandated for use in appeals taken to the Commission under Section 621.050. Section 536.070(10), RSMo 1986, renders admissible "any writing" made as a memorandum of an event "if it shall appear that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum ... within a reasonable time" after the occurrence of the event. It appears that Nichols' regular business conduct included the notification of the press of successful real estate transactions shortly after their closure. To the extent that Nichols now claims that these exhibits do not accurately reflect its business transactions, the documents were subject to the objections offered by Nichols at the hearing. Moreover, the statute provides that "[a]ll other circumstances of the making of such writing ... may be shown to affect the weight of such evidence, but such showing shall not affect its admissibility...." The Commission did not err in admitting the exhibits pursuant to Section 536.070(10) over Nichols' objections.

### IV.

The decision of the Administrative Hearing Commission is affirmed.

BLACKMAR, C.J., RENDLEN, HIGGINS, COVINGTON, and HOLSTEIN, JJ., and SEILER, Senior Judge, concur.

BILLINGS, J., not sitting.