LIVINGSTON MANOR, INC., d/b/a Livingston Manor Care Center,

and

Ashley Manor, Inc., d/b/a Ashley Manor Convalescent Center, Appellants,

v.

DEPARTMENT OF SOCIAL SERVICES, DIVISION OF FAMILY SERVICES, Division of Medical Services, State of Missouri, Respondents.

No. WD 43229.

Missouri Court of Appeals, Western District.

April 23, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 1991.

Harvey M. Tettlebaum, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, Jefferson City, for appellants.

Edwin F. Moats, Jefferson City, for respondents.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

Livingston Manor, Inc. (Livingston) and Ashley Manor, Inc. (Ashley) appeal the Administrative Hearing Commission's decision dismissing their complaints. Livingston and Ashley, two corporations operating nursing homes within Missouri, sought participation in Missouri's medicaid program. Livingston and Ashley submitted medicaid reimbursement requests to the Department of Social Services (DSS) and were granted most, but not all, of their respective requests. Both corporations later realized their facilities were encountering costs for which DSS allows reimbursement but costs that were not set forth in their previously submitted requests for reimbursement. Livingston and Ashley filed complaints with the Commission contending they were entitled to reimbursement for those allowable costs not included in their initial requests. The Commission dismissed both complaints for lack of subject matter jurisdiction. The Commission's decision is affirmed.

DSS is the state agency charged with the administration of Missouri's medicaid program pursuant to 42 U.S.C. § 301 et seq., and chapter 208, RSMo 1986. Pursuant to state regulation, DSS reimburses long-term care facilities for services rendered to medicaid recipients. 13 CSR 40–81.080.[1] Facilities desiring to establish a reimbursement rate for providing services to medicaid recipients must submit a written request for a per diem reimbursement rate and a budget to DSS. A facility's permanent per diem reimbursement rate is then calculated based upon the allowable costs encountered by the facility as reflected in its submitted request and budget. If the facility's claim for reimbursement is denied or not acted upon with reasonable promptness by DSS, the facility is entitled to a hearing before the Administrative Hearing Commission. § 208.156.2 RSMo 1986.

Livingston is a Missouri corporation doing business as Livingston Manor Care Center, a 94–bed nursing home located in

---

1. Since the time that this dispute arose, the pertinent regulation has been amended and renumbered as 13 CSR 70–10.010 (1990). All references to medicaid regulations will be in the previous numbering system since that system was in effect at the time this dispute arose.

Chillicothe, Missouri. Livingston is licensed as a skilled nursing facility and operated in Missouri for fourteen years without participating in the state's medicaid program. However, as many of Livingston's residents exhausted their financial resources, Livingston recognized an increasing need to become eligible for reimbursement under Missouri's medicaid program.

Livingston is operated by Juckette Management Company (Juckette), a company that manages nursing homes located in Missouri and Iowa. Juckette's accountants were familiar with Iowa's medicaid program but allegedly had no experience with Missouri's program. Juckette's accountants assisted in preparing Livingston's budget which was submitted to DSS as required by 13 CSR 40–81.081. Livingston submitted its budget to DSS for purposes of determining the facility's permanent per diem medicaid reimbursement rate.

The budget that Livingston submitted to DSS requested a permanent per diem medicaid reimbursement rate of $37.79. DSS adjusted Livingston's proposed rate by $2.29 and approved a permanent per diem reimbursement rate of $35.50. However, Livingston's proposed rate did not include requested reimbursement for certain allowable costs, including owner's compensation/home office costs, return on equity, minimum utilization, fringe benefits, and inflation for historical costs. Thus, the permanent per diem rate established by DSS did not reflect reimbursement for these otherwise allowable costs because they were omitted from Livingston's submitted budget. According to Livingston, Juckette's accountants, familiar only with Iowa's program, did not know these costs were eligible for reimbursement under Missouri's program. Livingston alleges that, if granted, these allowable costs omitted from its initial request would result in a $2.23 increase in the facility's per diem reimbursement rate.

Ashley is a Missouri corporation doing business as Ashley Manor Convalescent Center, a 52–bed nursing home located in Boonville, Missouri. Ashley operated as an intermediate care facility in Missouri for fourteen years prior to September 1985, when the facility was licensed as a skilled nursing facility. Ashley recognized an increasing need to become eligible for medicaid reimbursement as its residents depleted their financial resources. Ashley is also operated by Juckette and Juckette's accountants similarly assisted in preparing Ashley's budget. Ashley submitted this budget to DSS to assist in establishing the facility's permanent per diem medicaid reimbursement rate.

Ashley's budget requested a permanent per diem reimbursement rate of $29.29. DSS adjusted Ashley's proposal by $2.07 and approved a permanent per diem medicaid reimbursement rate of $27.21. Subsequent to this determination, Ashley submitted additional data to DSS and the facility's rate was increased to $29.24 per diem. However, Ashley later determined that its proposed budget also omitted several allowable costs, including owner's compensation/home office expense, return on equity, real estate increase because of reassessment, commercial laundry services, minimum utilization, fringe benefits and an inflation factor. Juckette's accountants were unaware that Missouri allowed reimbursement for several of the omitted costs and others were merely overlooked by Juckette in preparing Ashley's budget. According to Ashley, these allowable costs, if granted, would result in a $4.10 increase in its permanent per diem medicaid reimbursement rate.

Livingston and Ashley filed complaints with the Administrative Hearing Commission contending they were entitled to reimbursement for the allowable costs omitted from their respective reimbursement requests submitted to DSS. The Commission, following a hearing, dismissed both parties' complaints for lack of subject matter jurisdiction. In particular, the Commission determined that it lacked jurisdiction under § 208.156.2 because the facilities had not requested that DSS reimburse them for the allowable costs which were omitted from their budgets and DSS had not denied the facilities reimbursement for these omitted costs. Livingston and Ashley appealed

the Commission's decision to the Circuit Court of Cole County, Missouri. The circuit court affirmed the Commission's decision.

On appeal, Livingston and Ashley contend that the Commission is vested with subject matter jurisdiction over their complaints pursuant to § 208.156.2, which provides:

> Any person authorized under section 208.153 to provide services for which benefit payments are authorized under section 208.152 whose claim for reimbursement for such services is denied or is not acted upon with reasonable promptness shall be entitled to a hearing before the administrative hearing commission pursuant to the provisions of chapter 161, RSMo.

Livingston and Ashley contend that the Commission is vested with subject matter jurisdiction because DSS denied a portion of their respective claims by making downward adjustments in the amounts of $2.29 and $2.07 to each facility's respective requests in establishing their permanent per diem reimbursement rates. The facilities further contend that § 208.156.2 does not require that DSS deny any specific claim, such as the allowable costs omitted from their reimbursement rate requests, before the Commission acquires subject matter jurisdiction over a facility's entire claim. The facilities argue, in effect, that once DSS denies any portion of a facility's request the Commission acquires jurisdiction over all claims the facility may subsequently present to the Commission, even claims for reimbursement not previously presented to and denied by DSS.

■■■ A basic tenet of administrative law provides that "an administrative agency has only such jurisdiction or authority as may be granted by the legislature." *State ex rel. Missouri Health Care Ass'n v. Missouri Health Facilities Review Comm.*, 768 S.W.2d 559, 562 (Mo.App. 1988). If an administrative agency lacks statutory power to consider a matter, the agency is without subject matter jurisdiction. *Id.* The agency's subject matter jurisdiction cannot be enlarged or conferred by consent or agreement of the parties. *Id.* at 562–63. The Administrative Hearing Commission is similarly a creature of statute and possesses no more or less authority than that granted by statute. *State Bd. of Registration for Healing Arts v. Masters*, 512 S.W.2d 150, 161 (Mo.App.1974). Section 208.156.2 grants the Commission authority to hear matters where a facility's "claim for reimbursement ... is denied or is not acted upon with reasonable promptness" by DSS.

The word "claim" is a legal term having multiple meanings in various contexts. *Hampton v. Safeway Sanitation Servs., Inc.*, 725 S.W.2d 605, 610 (Mo.App.1987). A statute containing the word "claim" in a similar context was considered in *Robinson v. U.S. Navy*, 342 F.Supp. 381 (E.D.Pa. 1972). In *Robinson*, the court considered a statute denying the district court subject matter jurisdiction over any tort claim asserted against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency...." *Id.* at 382. In *Robinson*, the plaintiff submitted his claim to the appropriate Federal agency, but the claim was incomplete as plaintiff failed to state a definite amount for all of his damages. *Id.* at 383. The district court determined that the language of the statute required that plaintiff present his whole claim to the administrative agency before the district court could be vested with subject matter jurisdiction. *Id.* The court concluded the statute meant that "the agency should not be asked to settle half a claim, without some idea of the extent of the other half." *Id.*

The Eighth Circuit also considered the meaning of the word "claim" in *Taylor v. United Missouri Bank*, 693 F.2d 63 (1982). In *Taylor*, in interpreting Missouri law, the Eighth Circuit concluded that "claim" meant something more than the existence of a legal right. *Id.* at 65. "Under even the broadest definition, a claim requires that one exercise that legal right by an affirmative act or demand for payments due." *Id.*

In *Stamie E. Lyttle Co. v. Hanover County*, 231 Va. 21, 341 S.E.2d 174 (1986), the Supreme Court of Virginia considered a statute using the word "claim" in a context similar to § 208.156.2. The court concluded that "claim" meant calling upon an administrative agency "to pay an amount alleged to be due." *Id.* 341 S.E.2d at 178.

■ The statutory requirement found in § 208.156.2, that a facility's claim be denied by DSS prior to the Commission's acquiring jurisdiction, means that the Commission cannot acquire jurisdiction over a claim unless the facility has requested DSS to reimburse it for the particular cost for which it alleges entitlement. DSS did deny a portion of the facilities' claims by making downward adjustments to their requests, and the Commission is vested with jurisdiction to hear any complaints regarding those amounts. However, DSS was not presented with a claim for reimbursement for the allowable costs which were omitted from the facilities' budgets and the Commission, therefore, lacks subject matter jurisdiction over the facilities' subsequent claims of entitlement to reimbursement for those amounts.

Livingston and Ashley argue that *J.C. Nichols Co. v. Director of Revenue*, 796 S.W.2d 16 (Mo. banc 1990), supports their contention that the Commission possesses jurisdiction over their claims. In *J.C. Nichols*, the Commission modified the Director of Revenue's tax assessment against J.C. Nichols Co. by increasing the Director's prior assessment. *Id.* at 20. The Supreme Court of Missouri determined that the Commission possessed as much authority as did the Director of Revenue. *Id.* at 20–21. The court further determined that, since the Director had the authority to increase the tax assessment, the Commission likewise possessed the necessary authority to increase J.C. Nichols Co.'s tax assessment. *Id.*

Livingston and Ashley argue that since DSS has the authority to grant the facilities reimbursement for these allowable costs the Commission should likewise have the necessary authority. However, the issue presented here is not the extent of the Commission's authority but the extent of its subject matter jurisdiction. Section 208.156.2 fails to vest the Commission with jurisdiction over the facilities' "claims" for reimbursement for the allowable costs omitted from the facilities' budgets, and the Commission is therefore prohibited from exercising any authority.

■ Finally, Livingston and Ashley complain in their brief that DSS failed to properly negotiate with them, as required by 13 CSR 40–81.081(7)(c)(2), before establishing their permanent per diem reimbursement rate. Although the facilities discuss this alleged error in their brief, the issue was not presented in the "points relied on" portion of their brief as required by Rule 84.04. Where appellant fails to raise an issue of alleged error in his points relied on, the issue will be deemed abandoned by the appellate court. *State ex rel. Holly Inv. Co. v. Board of Zoning Adjustment*, 771 S.W.2d 949, 950–51 (Mo.App.1989); *American Lease Plans, Inc. v. Cardin*, 558 S.W.2d 325, 328 (Mo.App.1977).

The Commission's decision dismissing appellants' complaints is affirmed.

All concur.