

# SUPREME COURT OF MISSOURI
## en banc

CHARLES AND MARY HARTER,     )     *Opinion issued January 31, 2017*
                      )
            Appellants,     )
                      )
v.                       )     No. SC95532
                      )
DIRECTOR OF REVENUE,     )
                      )
            Respondent.     )

**PETITION FOR REVIEW OF A DECISION OF THE**
**ADMINISTRATIVE HEARING COMMISSION**
The Honorable Brett W. Berri, Commissioner

The Administrative Hearing Commission ("Commission") determined that Charles and Mary Harter (the "Harters") improperly calculated their income eligibility for purposes of the Property Tax Credit ("PTC") under sections 135.010 to 135.035.[1] The Commission found that the entire amount of Mr. Harter's social security and annuity payments should be included in their "income" for PTC purposes under section 135.010(5). As a result, the Commission found that the Harters were eligible only for a reduced PTC for the 2010 tax year under section 135.030.2 and that they were not eligible for any PTC for the years 2011-13 because their income exceeded the "maximum

---

[1]  Unless otherwise indicated, all statutory references are to RSMo Supp. 2013.

upper limit" of income eligibility under section 135.030.1(1). The Harters seek judicial review of the Commission's decision. This Court has jurisdiction under article V, section 3, of the Missouri Constitution, and the Commission's decision is affirmed.

**Background**

Mr. Harter is a former attorney with the Missouri Department of Revenue (the "Department"), and Mrs. Harter is a retired schoolteacher who was adjudged disabled by the Missouri Public School Retirement System (the "MPSRS"). Since 2009, the Harters have been claiming the PTC on their Missouri tax returns. The Director of the Department (the "Director") initially disputed the Harters' eligibility for the PTC based upon a lack of proof of disability.[2] Mr. Harter contacted the Director's legal counsel about this issue and explained that, because Mrs. Harter had been a schoolteacher, she had no involvement with the Social Security Administration and had been determined disabled by the MPSRS instead.

In a 2010 letter to Mr. Harter, the Director's legal counsel stated that she would place a note in the Harters' file indicating that the determination by the MPSRS was sufficient to prove Mrs. Harter meets the disability criterion for eligibility for the PTC under section 135.010(2). In this same letter, however, counsel indicated that the Harters' 2009 "income" for PTC purposes – as defined by section 135.010(5) – exceeded the "minimum base" income under section 135.030.1(2) and, accordingly, they were

---

[2] Typically, the Director requires Form SSA-1099 be provided to establish disability for PTC purposes. This document is prepared and provided by the Social Security Administration.

2

entitled only to a reduced or prorated PTC under section 135.030.2. The Harters did not challenge this determination.

On August 11, 2014, the Director issued final decisions about the Harters' income tax liability for the years 2010-13. As part of these decisions, the Director determined the Harters' eligibility for the PTC for those years. For 2010, like 2009, the Director determined that the Harters were entitled only to a reduced or prorated PTC under section 135.030.2 because – under section 135.010(5) – their 2010 "income" for PTC purposes exceeded the "minimum base" income under section 135.030.1(2). For 2011-13, the Director determined that the Harters were not eligible for any PTC under section 135.030.2 because their "income" for PTC purposes in those years exceeded the "maximum upper limit" under section 135.030.1(1).

The Harters timely filed a petition before the Commission claiming the Director improperly applied the definition of "income" for PTC purposes under section 135.010(5) and, as a result, they were entitled to a PTC, without reduction, for each of the years 2010-13.[3] The Commission calculated the Harters' "income" for PTC purposes under section 135.010(5) and determined that the Harters were entitled only to a prorated PTC for 2010 under section 135.030.2 and were not income eligible for any PTC for the years 2011-13 under section 135.030.1(1). The Harters appeal this determination.

---

[3] The Director made changes to the Harters' adjusted gross income for three of the four tax years at issue, but the Harters did not challenge these determinations in their petition to the Commission, and they are not considered here. *Fischer v. Dir. of Revenue*, 483 S.W.3d 858, 860-61 (Mo. banc 2016).

3

**Analysis**

At the outset, it appears the Harters misperceive the nature of the Commission's role and, as a consequence, both the nature of the Commission's actions and this Court's review. Each of their four points relied on begins: "The Administrative Hearing Commission erred in dismissing appellants' case by …." But the Commission did not "dismiss" the Harters' case. Instead, it determined – as if in the first instance – the Harters' "income" for PTC purposes under section 135.010(5) for each of the years in question. In *J.C. Nichols Co. v. Dir. of Revenue*, 796 S.W.2d 16, 20 (Mo. banc 1990), this Court explained:

> [T]he Commission is simply a hearing officer who exercises the same role as any administrative hearing officer authorized to hear contested cases within an agency .... It simply determines, on evidence heard, the administrative decision of the agency involved. The ... Commission decision **becomes** the administrative action of the Department. The legislature intended for the Commission **to render the agency's decision.** This is the import of the language of Section 621.050.2, requiring adherence to the procedures of Chapter 536 in appeals from the Director to the Commission.

*Id*. at 20 (emphasis added) (quotation marks and citation omitted).

As the Commission sagely explained in the present case, "we do not review the Director's actions, we remake them." Commission's Amended Decision, at p. 25. This Court, in turn, reviews the decision of the Commission, not the Director. Where, as here, the taxpayers' petition raises no genuine issues of material fact and the Commission's decision decides only questions of law, this Court's review of the Commission's decision is *de novo*. *Eilian v. Dir. of Revenue*, 402 S.W.3d 566, 568 (Mo. banc 2013).

4

## I. The Commission Properly Determined the Harters' PTC

In their petition under section 621.050.1, RSMo 2000, the Harters did not contest the Director's determination of their Missouri Adjusted Gross Income ("MAGI") for the years 2010-13 or the income taxes due upon those amounts. Instead, the Harters only challenged the Director's determination regarding their eligibility for – and the proper amount of – the PTC in those years. Accordingly, that is the only issue the Commission addressed and it is the only issue before this Court. *Fischer*, 483 S.W.3d at 860-61.

Sections 135.010 through 135.035 establish the PTC as a form of tax relief for low-income taxpayers who are elderly or disabled.

> The senior citizen property tax relief provisions offer an individual … [an income] tax credit … for [either the amount of] property taxes paid on the home and up to five acres surrounding it or for … [a percentage] of rent payments if the taxpayer is a renter. ***To qualify*** the taxpayer must be over 65 years of age or disabled ***and meet the income eligibility guidelines***. The credit is "refundable;" that is, if the credit exceeds the taxpayer's tax liability, the director of revenue will treat the unused portion of the credit as an overpayment of income tax and will send the taxpayer a refund.

*Missouri Merchs. & Mfrs. Ass'n v. State*, 42 S.W.3d 628, 634-35 (Mo. banc 2001) (footnote omitted) (emphasis added) (referred to herein as "*MMMA*").

As noted in *MMMA*, there are two eligibility criteria for the PTC. First, the claimant (or claimant's spouse) must be older than 65 or disabled. Second, the claimant must meet the income eligibility criterion under section 135.030.[4] In this appeal, the Harters raise challenges concerning both eligibility criteria.

---

[4] Pursuant to section 135.030.1(1), a claimant is not eligible for a PTC for any year in which the combined "income," as defined in section 135.010(5), exceeds $30,000. If the combined income for a given year is less than $30,000 but greater than $14,300 (i.e., the "minimum base" income),

5

### A. The Harters Met the Disability Eligibility Criterion

The Harters claim that the Commission erred by "allowing the Director to require disabled Missouri school teachers to provide a federal form 1099 [i.e., SSA-1099], knowing they cannot have one." This claim misstates the Commission's decision.

In their pleadings before the Commission, the Harters claimed that Mrs. Harter was disabled for purposes of the threshold requirements of the PTC. The Director did not dispute this fact before the Commission, conceding for tax years 2010-13 that Mrs. Harter was disabled within the meaning of section 135.010(2). Even though Mrs. Harter's disability for tax years 2010-13 was not disputed, the Commission specifically noted that she satisfied the age/disability eligibility criterion.[5] As a result, the Harters' first claim is rejected.

### B. The Commission Properly Calculated the Harters' "Income" for PTC Purposes

A claimant's "income" for PTC purposes is not the same as the claimant's MAGI used as the starting point to calculate a taxpayer's income tax liability. Instead, section 135.010(5) supplies the definition of "income" used to apply the PTC income eligibility criterion in section 135.030. The portions of this definition relevant to the Harters' appeal provide:

---

the applicant is entitled only to a reduced or prorated PTC. § 135.030.2. And if the combined income for a given year is below the "minimum base" income, the applicant is entitled to the entire PTC for that year. *Id.*

[5] It also appears that Mr. Harter received disability payments from the Social Security Administration for tax years 2010-13. Under section 135.010(1), if a couple is eligible to file a joint federal income tax return and file a combined Missouri return, the two constitute a single

(5) "Income", Missouri adjusted gross income as defined in section 143.121 less two thousand dollars, or in the case of a homestead owned and occupied, for the entire year, by the claimant, *less four thousand dollars* as an exemption for the claimant's spouse residing at the same address, *and increased, where necessary, to reflect* the following:

> (a) *Social Security*, railroad retirement, and veterans *payments and benefits* unless the claimant is a one hundred percent service-connected, disabled veteran or a spouse of a one hundred percent service-connected, disabled veteran. The one hundred percent service-connected disabled veteran shall not be required to list veterans payments and benefits;

> (b) The *total amount of all other public and private pensions and annuities*[.]

§ 135.010(5) (emphasis added).

The Harters claim that the definition of "income" in section 135.010(5)(a) does not include *all* of Mr. Harter's "Social Security … payments and benefits" receipts, but only the portion of those "payments and benefits" related to Mr. Harter's age. In other words, the Harters contend that the phrase "Social Security … payments and benefits" in section 135.010(5)(a) excludes the social security "payments and benefits" he received due to his disability. Similarly, the Harters claim that the definition of "income" in section 135.010(5)(b) does not include *all* of Mr. Harter's "annuity" benefits, but only the portion of those benefits on which the Harters paid income taxes. This Court rejects both arguments because each ignores the plain and unambiguous language of section 135.010(5).

---

"claimant" and are eligible to seek a PTC if either of them is "disabled" according to the definition in section 135.010(2).

### 1. Social Security Payments and Benefits

For each of the years 2010-13, the Commission determined the Harters' income eligibility for the PTC under section 135.010(5) by beginning with the Harters' MAGI, subtracting $4,000, and then adding – pursuant to section 135.010(5)(a) – the amount of Mr. Harter's "Social Security … payments and benefits" not previously included in the Harters' MAGI. The Harters claim that the Commission erred because they contend the phrase "Social Security … payments and benefits," as used in section 135.010(5)(a), refers only to Mr. Harter's age-related social security benefits and not those relating to his disability. But nothing in section 135.010(5) suggests that, for purposes of income eligibility for the PTC, "Social Security … payments and benefits" somehow excludes any "Social Security … payments and benefits" related to disability.

Moreover, the Harters' argument is refuted by the remainder of section 135.010(5)(a). In addition to social security payments and benefits, section 135.010(5)(a) also includes as part of an applicant's "income" for PTC purposes all "veterans payments and benefits." But section 135.010(5)(a) goes on specifically to exclude "veterans payments and benefits" if the claimant (or the claimant's spouse) is a "one hundred percent service-connected, disabled veteran." Because the General Assembly expressly carved out of "veterans payments and benefits" any amounts received by certain disabled veterans, the Court concludes that the General Assembly did not – in the same sentence – implicitly carve out of "Social Security … payments and benefits" those amounts received due to disability.

8

The Harters contend that a different result is compelled by section 143.091, RSMo 2000, which provides that any "term used in sections 143.011 to 143.996 shall have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required." This is incorrect. As the introductory phrase indicates, this statute governs the meaning of terms used in chapter 143, RSMo, which contains Missouri's income tax provisions. Nothing in section 143.091 prohibits the General Assembly from adopting a different definition to be used in determining "income" eligibility for the PTC in chapter 135, RSMo. By its terms, section 143.091 is not applicable to the meaning of terms in chapter 135, and it provides no basis for altering the plain language of the definition of "income" for PTC purposes in section 135.010(5).[6]

### 2. All Other Public and Private Pensions and Annuities

In determining the Harters' income eligibility for the PTC under section 135.010(5), the Commission also added – pursuant to section 135.010(5)(b) – the amount of Mr. Harter's private annuity distributions not already included in the Harters' MAGI. The Harters claim that the Commission erred because the phrase "[t]he total amount of all other public and private pensions and annuities," as used in section 135.010(5)(b), refers

---

[6]  It is not clear that federal law draws the sharp distinction between age-related and disability-related social security benefits that the Harters suggest. *See* 26 U.S.C. § 86(d)(1) (for purposes of determining the amount of social security benefits to be included in federal adjusted gross income, the term "social security benefit" includes any "monthly benefit under title II of the Social Security Act," including disability-related benefits). Even if federal law draws the distinction that the Harters claim, Missouri income tax statutes do not. *See* § 143.125.1 ("As used in this section, the following terms mean: (1) **'Benefits'**, *any Social Security benefits* received by a taxpayer age sixty-two years of age and older, *or* Social Security disability benefits[.]") (emphasis added).

9

only to annuity distributions that are otherwise taxable.  Again, this construction contradicts the plain language of the statute.

As above, the Harters rely on section 143.091, which they contend requires this Court to give the term "annuity" in section 135.010(5)(b) the same meaning as it has in federal tax law.[7]  However, by its terms, the language of section 143.091 refers only to terms used in chapter 143 (income tax) and does not purport to control the meaning of terms used in chapter 135 (PTC) or elsewhere.  Accordingly, in determining the Harters' eligibility for the PTC, the Commission properly included the "***total amount*** of all other public and private pensions and annuities."  § 135.010(5)(b) (emphasis added).  Neither section 143.091 nor any of the Harters' other arguments justify a departure from the plain meaning of section 135.010(5)(b).

## II.     The Commission Did Not Err in Refusing to Estop the Director

The Harters claim that the doctrines of "res judicata" and/or "collateral estoppel" somehow forever preclude the Director from challenging their right to claim the full PTC because of a letter Mr. Harter received from the Director's legal counsel in 2010.  That letter states the Department was increasing the Harters' 2009 MAGI (and, therefore, increasing their 2009 "income" for PTC purposes under section 135.010(5) and decreasing the amount of their 2009 PTC) under section 135.030.2 because the Harters improperly claimed a reduction for qualified health insurance premiums for that year.

---

[7]  The Harters do not offer a definition of "annuity" under federal tax law.  Instead, they maintain only that, because some portions of some annuities are not taxable as income under federal law, such portions cannot be included as "income" for purpose of determining their

10

That letter also acknowledges that Mrs. Harter meets the PTC disability criterion because she was determined to be disabled by the MPSRS, and the author of the letter states she would include a note to that effect in the Harters' file to aid in processing future PTC claims.

Referring to this letter as a "stipulation of counsel," the Harters insist that it precludes the Director – for all years after 2009 – from challenging the Harters' eligibility for the PTC, not merely under the disability eligibility criterion but under the income eligibility criterion as well. The Court rejects this claim on multiple, independently sufficient grounds.

The Harters' reliance upon the doctrines of "res judicata" and/or "collateral estoppel" is misplaced. Both concepts speak to the preclusive effect in one action of a *judgment* entered in a prior action. *See Brown v. Carnahan*, 370 S.W.3d 637, 658-59 (Mo. banc 2012) (distinguishing the two doctrines); *Moore Auto. Grp., Inc. v. Goffstein*, 301 S.W.3d 49, 55 n.4 (Mo. banc 2009) (concluding "there was no judgment on the merits in the garnishment proceeding on which collateral estoppel or res judicata could be based"). A letter from the Director's counsel is not a judgment, nor does it have the effect of a judgment.

Instead, the true nature of the Harters' claim is equitable estoppel, i.e., they want this Court to hold that the Director cannot take a position contrary to the position taken by the Director's counsel in the 2010 letter. But the "doctrine of equitable estoppel is

---

eligibility for the PTC under section 135.010(5)(b). For the reasons set forth above, the Court rejects this claim.

11

rarely applied in cases involving a governmental entity, and then only to avoid manifest injustice." *Lynn v. Dir. of Revenue*, 689 S.W.2d 45, 48 (Mo. banc 1985) (citing *Bartlett & Co. Grain v. Dir. of Revenue,* 649 S.W.2d 220, 224 (Mo. 1983)). More importantly, the "incidence of taxation is determined by law, and the Director of Revenue and subordinates have no power to vary the force of the statutes." *Id*. (citing *St. Louis Country Club v. Admin. Hearing Comm'n of Mo.*, 657 S.W.2d 614, 616 (Mo. banc 1983) (noting "the incidence of taxes is determined by law, and that the Director of Revenue and his subordinates have no power to vary the force of a statute ... [and] cannot bind future Directors, or limit the state's right to collect taxes properly owing")). Accordingly, the Court rejects the Harters' claim that the Director was estopped from challenging their income eligibility for the PTC in 2010-13.

Even if the Director is bound by the 2010 letter from counsel, which the Director is not, nothing in the letter supports the Harters' claim. The letter does not, as the Harters suggest, irrevocably commit the Director never to contest on any ground the Harters' right to claim the PTC. Instead, at most, it memorializes the Director's counsel's understanding that Mrs. Harter's disability cannot be proven by form SSA-1099 or a letter from the social security administration confirming her disability, but that Mrs. Harter's disability is proven by the determination of the MPSRS. Yet there is no need to resort to the doctrine of equitable estoppel to preclude the Director from challenging Mrs. Harter's disability for the years 2010-13 because the Director *concedes* that fact, and the Commission found it to be so.

12

Nothing in the letter purports to say that the Director will never challenge the Harters' income eligibility for the PTC and, in fact, the letter reduces the Harters' 2009 PTC based on their income. Finally, and most importantly, this Court reviews only the Commission's *de novo* determination of the Harters' income eligibility for the PTC, not the Director's decision on that issue. Because the Director is not bound by the 2010 letter (and, in any event, could never be bound beyond the letter's terms), the Commission did not err in determining the Harters' PTC income eligibility for 2010-13.

## III.     The Commission Did Not Err in Granting Summary Decision

The Harters moved for summary decision before the Commission, claiming that the 2010 letter from the Director's counsel barred the Director from challenging the Harters' PTC claim for the years 2010-13. Thereafter, the Director moved for summary decision, claiming that there were no disputed questions of fact and that the Commission could address the issues raised by the Harters without a hearing. The Commission denied the Harters' motion for summary decision and granted the Director's motion for summary decision. Now, the Harters claim that the Commission lacked authority to enter any decision in their case without holding a hearing. This is incorrect.

The Harters rely on section 621.050, RSMo 2000, which provides:

Except as otherwise provided by law, any person or entity shall have the right to appeal to the administrative hearing commission from any finding, order, decision, assessment or additional assessment made by the director of revenue. Any person or entity who is a party to such a dispute ***shall be entitled to a hearing*** before the administrative hearing commission ***by the filing of a petition with the administrative hearing commission*** within thirty days after the decision of the director is placed in the United States mail or within thirty days after the decision is delivered, whichever is earlier.

13

§ 621.050.1 (emphasis added).

Contrary to the Harters' claim, section 621.050.1 does not create a "right" to a hearing before the Commission in all cases, and particularly not in cases in which the taxpayer's petition fails to raise any disputed issues of material fact. Instead, section 621.050.2 provides that the "procedures applicable to the processing of such hearings and determinations shall be those established by chapter 536," and section 536.073.3, RSMo 2000, in turn, requires that the "administrative hearing commission shall adopt rules providing for … disposition in the nature of default judgment, judgment on the pleadings, or summary judgment." Complying with section 536.073.3, the Commission has adopted a rule for disposing of contested cases by summary decision. *See* 1 CSR 15-3.446(6).

Accordingly, the Court rejects the Harters' claim that the Commission lacked authority to dispose of the issues raised in their petitions by summary decision. If there are no disputed issues of material fact, the Commission's procedure for summary decision no more violates the "right" to a hearing under section 621.050.1 than this Court's rules permitting summary judgment violate the constitutional right to a jury trial under article 1, section 22(a), of the Missouri Constitution. Trials (in the latter instance) and hearings (in the former) are the means by which disputed issues of material fact are decided. When there are no such disputes, a mechanism for summary disposition serves

14

the best interests of all involved.  Here, because no disputed issues of material fact were raised by the Harters' petition,[8] a summary decision by the Commission was appropriate.

## Conclusion

For the reasons set forth above, the decision of the Commission is affirmed.

_____

Paul C. Wilson, Judge

Breckenridge, C.J., Fischer, Stith, Draper and Russell, JJ.

---

[8]   The Harters complain that the authenticity of the 2010 letter from Director's counsel was a material fact and that, at a hearing, it would have offered testimony from the letter's author about that topic.  As explained above, however, even assuming the letter's authenticity and taking its terms at face value, it does not preclude the Director from determining the Harters' income eligibility for the PTC for all years after 2009.  More importantly, it does not preclude the Commission from doing so for the years 2010-13 in ruling on the Harters' petition.  As a result, the authenticity of the 2010 letter was not a disputed material fact requiring a hearing to resolve. And, to the extent the Harters suggest that the author of the 2010 letter would have testified she made some different or greater concession than the letter shows, such a concession would bind neither the Director nor the Commission for the reasons previously set forth in this opinion.