**LEMAY BUILDING CORPORATION,
Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 76731.

Supreme Court of Missouri,
En Banc.

Dec. 20, 1994.

Rehearing Denied Jan. 24, 1995.

Terrence F. Moffitt, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

PRICE, Judge.

Lemay Building Corporation (Lemay) contests the Administrative Hearing Commission's decision holding that income received from a mobile home park Lémay owns in Florida is income earned partly within and partly without Missouri, pursuant to § 143.451, RSMo Supp.1988. Instead, Lemay asserts the income should be treated as earned wholly within Florida and wholly without Missouri. Because Lemay took sufficient part in the production of income from the mobile home park, we hold that the

income was earned partly within and partly without Missouri. The decision of the Administrative Hearing Commission is affirmed.

This Court has exclusive appellate jurisdiction of cases involving the construction of state revenue laws. *Mo.Const.* art. V, § 3. This Court must affirm the decision of the Administrative Hearing Commission if it is supported by the law and competent and substantial evidence on the whole record. *House of Lloyd, Inc. v. Director of Revenue,* 824 S.W.2d 914, 916 (Mo. banc 1992).

### I.

Lemay is a Missouri corporation engaged in business as a real estate holding company. Thomas Green is the president, the director, and a shareholder of Lemay. He maintains his normal working office in St. Louis County. Lemay owns Ridgewood Mobile Home Park (Ridgewood) in Venice, Florida, and is licensed to do business in that state. Lemay treated all rental income from Ridgewood as earned wholly within Florida and wholly without Missouri.

In Mr. Green, Lemay retained final decision-making authority over Ridgewood's operation. Lemay retained National Real Estate Management Company (National), a Missouri corporation that shares office space with Lemay in St. Louis, to provide bookkeeping and tax preparation services for Ridgewood. Tax returns are signed by Mr. Green.

Mr. Green hired Ridgewood's first manager, who worked from 1970–1977. That manager hired his own replacement, subject to Mr. Green's approval. The manager is accountable to Mr. Green, and Mr. Green has the authority to fire him. Lemay employs other persons at Ridgewood under the manager's supervision. Mr. Green has the authority to change Ridgewood's rental criteria.

Lemay maintains two checking accounts in Florida for Ridgewood—a payroll and a general account. Ridgewood's manager signs payroll checks from the payroll account. Quarterly wage reports are signed by Mr. Green. Mr. Green signs checks from the general account to pay operating expenses approved by the manager. Mr. Green is authorized to decide whether to sign any check. Mr. Green is authorized to withdraw excess money from Ridgewood's general account.

Mr. Green visits Ridgewood three to four times a year to review matters with the manager. At the hearing, Mr. Green testified that a recent reason for visiting Ridgewood was to determine whether it was necessary to hire an attorney because the state was condemning part of the roadway.

Lemay contends its rental income from Ridgewood should not be taxed in Missouri for two reasons: first, its activities in Missouri and Florida do not constitute a unitary business; and second, the source of its income was not in Missouri. We disagree.

### II.

Lemay contends the Administrative Hearing Commission erred in failing to make a specific conclusion of law whether Lemay's activities in Florida and Missouri constitute a unitary business. This is a constitutional argument that Lemay did not raise in its complaint before the Administrative Hearing Commission or in its petition for review to this Court.[1] As no briefs from the administrative hearing were submitted to this Court as part of the record, we assume the first time this issue was raised was in Lemay's briefs before this Court. This argument should have been raised before the Administrative Hearing Commission. *City of Chesterfield v. Director of Revenue,* 811 S.W.2d

---

1. The unitary business requirement has emerged from a line of United States Supreme Court cases as a constitutional principle that a state may not tax the income of a multistate corporation unless the activities of the corporation are a "unitary business" with those activities outside the taxing state. *See Exxon Corp. v. Wisconsin Department of Revenue,* 447 U.S. 207, 223, 100 S.Ct. 2109, 2120, 65 L.Ed.2d 66 (1980). A unitary business

is one "whose activity outside the taxing state so functionally integrates with its activity within the taxing state as to make impossible the separate measurement of each to the multistate enterprise." *Dow Chemical,* 787 S.W.2d at 280 (citing *ASARCO Inc. v. Idaho State Tax Commission,* 458 U.S. 307, 316–17, 102 S.Ct. 3103, 3108–09, 73 L.Ed.2d 787 (1982)).

375, 377–78 (Mo. banc 1991). Constitutional issues not raised at the first opportunity are deemed waived. *Id.*

Moreover, in *Dow Chemical Co. v. Director of Revenue,* 787 S.W.2d 276, 283 (Mo. banc 1990), we held that the unitary business requirement is to be construed *in pari materia* with Missouri's statutory source of income test. The facts in this particular case are such that our analysis of the source of income test satisfies the unitary business criteria. Therefore, any failure by the Administrative Hearing Commission to address this issue would not alter the outcome of this case.

### III.

■ Missouri corporations must pay tax on income derived from sources within Missouri. § 143.431.1, RSMo1986. Taxpayers may elect to compute the portion of income from all sources in this state according to the single-factor apportionment method contained in § 143.451.2(2)(b), RSMo Supp.1988. This section refers to income resulting from transactions "partly within this state and partly without this state." On its Missouri income tax return for May 1989 to April 1990, Lemay elected to use this single-factor apportionment formula.

The most recent case construing section 143.451 is *J.C. Nichols Co. v. Director of Revenue,* 796 S.W.2d 16 (Mo. banc 1990). That case provided a clear outline of Missouri law on this issue. *Id.* at 17–18. In *J.C. Nichols,* we held that since the "overall effort of [Nichols'] income-producing activities was directed from [the Missouri] office, and the management structure which produced the income from [out-of-state] properties was in Missouri," the income was partially within Missouri and partially within another state. *See also Wohl Shoe Co. v. Director of Revenue,* 771 S.W.2d 339, 342 (Mo. banc 1989) (a transaction is partially within and partially without Missouri "if the Missouri effort is among the efficient causes which contribute directly to the production of the income"); *Bank Building & Equipment Corp. v. Director of Revenue,* 687 S.W.2d 168, 171 (Mo. banc 1985) (transactions are taxable when the "brains" of the operation are located in Missouri).

In the present case, Mr. Green maintains final authority over all decisions made by the manager of the mobile home park. He signs checks on Ridgewood's general account. He has the authority to withdraw excess funds from that account. All bookkeeping and tax preparation services are performed in Missouri by National, a contractor chosen by and serving at the pleasure of Lemay. Finally, Mr. Green visits Ridgewood three to four times per year to review business with the manager. All of these activities demonstrate considerable Missouri activity in the management of Ridgewood and in the production of its income.

Lemay contends that *J.C. Nichols* should be distinguished because in that case this Court did not present enough facts to determine whether there was more or less involvement in the income-producing activities than in the present case. We find this unpersuasive. Regardless of the level of involvement in *J.C. Nichols,* Lemay clearly maintained enough participation and control to be an efficient cause contributing directly to the production of Ridgewood's income and to render the transactions partly within and partly without Missouri.

■ Additionally, Lemay argues that although its president was authorized to override managerial decisions, during the tax period in question he did not actually assert such authority. This, too, is unpersuasive. First, merely possessing the authority is sufficient. *See In re Kansas City Star Co,* 346 Mo. 658, 142 S.W.2d 1029, 1039 (banc 1940). Second, Mr. Green testified at the hearing that he signed checks and visited Ridgewood regularly. This shows sufficient involvement, even without the exercise of his veto power.

### IV.

The decision of the Administrative Hearing Commission is affirmed.

All concur.