MAXLAND DEVELOPMENT
CORPORATION, et al.,
Appellants,

v.

DIRECTOR OF REVENUE, Respondent.

MAXLUNE REALTY CORPORATION
& Tobeck Realty Corporation,
Appellants,

v.

DIRECTOR OF REVENUE, Respondent.

PAJIA REALTY CORPORATION &
Jopat Building Corporation,
Appellants,

v.

DIRECTOR OF REVENUE, Respondent.

Nos. 80037, 80040 and 80041.

Supreme Court of Missouri,
En Banc.

Jan. 27, 1998.

Terrence F. Moffitt, Law Office of Thomas R. Green, St. Louis, for Appellants.

1. All statutory references are to RSMo 1986.

Jeremiah W. (Jay) Nixon, Atty. Gen., Edward F. Downey, Asst. Atty. Gen., Jefferson City, for Respondent.

BENTON, Chief Justice.

The appellant Missouri corporations computed their state income tax by electing the single-factor method. *Section 143.451.2(2)(b)*.[1] The appellants classified rental income from out-of-state properties as "wholly without Missouri." The Director of Revenue and the Administrative Hearing Commission reclassified this income as "partly within and partly without Missouri." This appeal followed. *Mo. Const. art. V., sec. 3.* The decision in cases 80037 and 80041 is affirmed, and in case 80040 is reversed and remanded.

## I.

*Case 80037.* Maxland Development Corp., Baltgem Development Corp., Barget Development Corp., and Tomron Development Corp. each own one-sixth of commercial property, a shopping center, in Maryland. Thomas R. Green, the key officer of each corporation, signed all tax returns. National Real Estate Management Corporation—owned by Green's three children—kept the books and prepared the tax returns for the corporations. Green—the only person who could disburse money from National's accounts—signed all checks for the management of the property, and signed all leases on behalf of the corporations. After the one initial tenant filed for bankruptcy in 1973, Green hired a Maryland agent to remodel and manage the property, and find and deal with tenants. Several of the resulting leases required the corporations to maintain common areas and gave them discretion to approve alterations, assignments, or subletting. Some leases further required the Missouri corporations as lessors to provide insurance, and a few leases required them to make repairs. Three of the four corporations together own three-fourths of a 96–unit apartment complex in Missouri. The fourth, Tomron, owns an apartment building in Missouri.

*Case 80041.* Pajia Realty Corp. and Jopat Building Corp. each own one-fourth of commercial property, a shopping center, in Alabama. Green was the president and a director of each corporation. Again, he signed the tax returns and National performed the bookkeeping and tax preparation. Green had authority to disburse funds for the corporations. The sole tenant filed for bankruptcy in 1975. Green signed, on behalf of the corporations, agreements with realtors to find new tenants. Several of the leases, all signed by Green, obligated the corporations as lessors, among other things, to procure liability and fire insurance, make structural, exterior, and common area repairs, provide common area maintenance, and gave them discretion to approve assignment or subletting. The corporations own, respectively, a 32–unit and 24–unit apartment complex in Missouri.

*Case 80040.* Maxlune Realty Corp. and Tobeck Realty Corp. each own one-third of commercial property, a shopping center, in Michigan. Green, president of both, signed the tax returns. In this case, the lessors' only obligation was to restore the building if damaged or destroyed by fire or other peril. The initial term of this "triple net" lease was from 1963 through 1983, renewable thereafter for four five-year periods. The corporations and the one tenant amended the lease in 1971, but only to reduce the rent. Again, Green signed all checks and tax returns for the corporations, and National performed bookkeeping and tax functions. The corporations each comprise one-eighth of a Missouri partnership, which owns two apartment complexes in Missouri.

## II.

According to each appellant, its out-of-state and Missouri transactions do not form a unitary business, and therefore income received from its out-of-state property cannot be taxed by Missouri.

■ Under Missouri law, a corporation has three options in computing its income

tax: (1) the single-factor "source of income" method, *sec. 143.451.2(2)(b),* (2) the three-factor "unitary business" method in the Multistate Tax Compact, *sec. 32.200, art. IV,* or (3) any other method of allocation agreed to by the taxpayer and the Director that apportions income to this state according to the method shown in the corporation's books or records, *sec. 143.461.2.* Once the single-factor option is chosen for a particular year, it cannot be revoked. *Bartlett & Co. Grain v. Director of Revenue,* 649 S.W.2d 220, 223 (Mo.1983).

■ Any one state may impose an income tax that apportions all of a multistate corporation's income only if the interstate and extrastate activities are a unitary business. *Trinova Corporation v. Michigan Department of Treasury,* 498 U.S. 358, 378, 111 S.Ct. 818, 831, 112 L.Ed.2d 884 (1991); *Dow Chemical Co., Inc. v. Director of Revenue,* 834 S.W.2d 742, 745–46 (Mo. banc 1992). However, the corporations in this case elected to be taxed under the single-factor method in section 143.451.2(2)(b), which is based on the source of income. The requirement of a unitary business is "irrelevant" and "extraneous" to source of income taxation. *Dow Chemical Co. v. Director of Revenue,* 834 S.W.2d 742, 746 (Mo. banc 1992); *Dow Chemical Co. v. Director of Revenue,* 787 S.W.2d 276, 283 (Mo. banc 1990).[2]

■ The Missouri corporations further argue that the classification of income from the out-of-state properties as "partly in and partly outside this state" violates the Due Process and Interstate Commerce clauses of the United States Constitution. They contend that the resulting tax is unconstitutional because it is not fairly apportioned, discriminates against interstate commerce, and is not fairly related to the service provided by the state. *See Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977). The corporations concede, however, that Missouri's three-factor method does not violate the Due Process or Interstate Commerce clauses. *See Trino-*

---

**2.** The corporations cite *Lemay Bldg. Corp. v. Director of Revenue,* 889 S.W.2d 835, 837 (Mo. banc 1994) (first full paragraph), for the proposition that the unitary business requirement and source

of income test are in pari materia. The *Dow* case, cited in *Lemay* and this opinion, holds that they are *not* in pari materia. *Dow,* 787 S.W.2d at 284.

*va*, 498 U.S. at 380–81, 111 S.Ct. at 833; *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 170, 103 S.Ct. 2933, 2943, 77 L.Ed.2d 545 (1983); *Butler Bros. v. McColgan*, 315 U.S. 501, 509, 62 S.Ct. 701, 705, 86 L.Ed. 991 (1942). Since the corporations *elected* to be taxed according to the single-factor method and not by the three-factor method, they cannot now complain that its application to them is unconstitutional. Further, the constitutionality of a mandatory single-factor method is not at issue here. *See Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 273, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197 (1978).

### III.

■ The corporations here elected the single-factor method that computes income tax by a formula:

> the amount of business transacted wholly in this state shall be added to one-half of the amount of business transacted partly in this state and partly outside this state and the amount thus obtained shall be divided by the total amount of business transacted, and the net income shall be multiplied by the fraction thus obtained...

*Sec. 143.451.2(2)(b)*. The issue in this case is whether the income from the out-of-state properties resulted from transactions "partly in and partly outside this state." *Id.* A transaction is "partly in and partly outside this state" if "the Missouri effort is among the efficient causes which contribute directly to the production of the income." *Wohl Shoe Co. v. Director of Revenue*, 771 S.W.2d 339, 342 (Mo. banc 1989). Real estate transactions are "partly in and partly outside this state" when the overall effort of the income-producing activities is controlled and directed from a management structure in Missouri. *J.C. Nichols Co. v. Director of Revenue*, 796 S.W.2d 16, 18 (Mo. banc 1990). Income arises partly from transactions in this state when the "brains"—that plan, design, and direct a specialized operation in other states—are in Missouri. *Bank Bldg. & Equip. Corp. v. Director of Revenue*, 687 S.W.2d 168, 171 (Mo. banc 1985).

In *Lemay Bldg. Corp. v. Director of Revenue*, 889 S.W.2d 835 (Mo. banc 1994), the Missouri effort was held to be an efficient cause contributing directly to the production of income. There the president of the Missouri corporation, Thomas R. Green, maintained final authority over all decisions made by the manager of an out-of-state mobile home park. Green signed checks on the operating account, with authority to withdraw excess funds from it. *Id.* at 837. In addition, all bookkeeping and tax services were performed in Missouri by National. *Id.* "These activities demonstrate considerable Missouri activity in the management of ... and in the production of income." *Id.* Finally, this Court said that merely possessing overriding managerial authority is sufficient. *Id.*

■ The corporations attempt to distinguish *Lemay*, noting that the Lemay corporation owned 100 percent of the mobile home park, whereas each corporation here owns a lesser percent of the out-of-state property. The corporations, in effect, contend that 100 percent ownership is required for "control" of the out-of-state business to constitute an "efficient cause." The test, however, is not ownership, but control of the management. Control of management is determined, case-by-case, whether it rises to the level of an "efficient cause" which contributes directly to the production of income.

■ With respect to the Maryland and Alabama properties, the Missouri corporations retained control over management, even if they did not always exercise it. In Maryland, Green had final control over the agent hired to manage and remodel the property, whereas in Alabama the corporations managed the property directly. In both Maryland and Alabama, the corporations were legally obligated to manage the property. This same type of control in *Lemay* constituted an efficient cause contributing directly to the production of income. The income derived from the Maryland and Alabama properties was therefore properly classified as partly in and partly outside this state.

■ The owners of the Michigan property, however, did not retain control of management. The Administrative Hearing Commission flatly found:

> The lease was a triple net lease; i.e., the lessee was to pay for all expenses and maintenance, structural as well as non-structural. The lessee was obligated to

insure the property and pay real estate taxes and utilities. The lessor provided no services to the tenant. The lessor was obligated to restore the building in the event that it was damaged or destroyed by fire or other peril, but no such damage or destruction has occurred. The lessee had the right to sublease the property without the lessor's consent, and has done so.

In this passive investment, the corporations had no control of management. The Missouri effort was not an "efficient cause" contributing directly to the production of income for the Michigan property, and the resulting income was thus "wholly without this state."

### IV.

With respect to cases 80037 and 80041, the decision of the Administrative Hearing Commission is affirmed. Case 80040 is reversed and remanded for proceedings consistent with this opinion.

All concur.